[L. A. No. 10426.  In Bank.—October 1, 1928.]

EMILE J. COUTURE et al., Respondents, v. OCEAN PARK BANK (a Corporation), Appellant.

Tanner, Odell & Taft for Appellant.

Weber & Crawford, and Samuel J. Crawford for Respondents.

CURTIS, J.—Action brought to recover the sum of $601.02 from the defendant bank, which amount plaintiffs allege they had deposited with said bank to their credit. ■ The defense by the bank is that it paid out said sum upon two checks drawn by the plaintiffs. The evidence shows that the plaintiffs had a checking account with defendant at least in an amount equal to the amount sued for. The plaintiffs were engaged in the plumbing business and had in their employ as foreman of their plumbing department one J. B. Tailer. They were indebted to the Manual Arts Plumbing Company for materials purchased from said company on account of two jobs, upon which Tailer had acted as foreman. In satisfaction of this indebtedness to the Manual Arts Plumbing Company, they drew two checks and gave them to Tailer with instructions to deliver them to the Manual Arts Plumbing Company. One of these checks was by mistake made payable to the Manual Arts Hardware Company, instead of the Manual Arts Plumbing Company. The total of these two checks was the amount sued for herein, and said checks, together with their subsequent indorsements, are as follows:

"OCEAN PARK BANK 90–193
"Commercial                                      Savings
            "Santa Monica Branch.
            "Santa Monica, Cal. Sept. 2, 1922.   No. 103
"Pay to the order of Manual Arts Hdw. Co. for
J B Tailer $283.02 Two Hundred Eighty-Three
and 02/100 Dollars.
                    "THE SLINGLUFF-COUTURE Co.
                        "EMILE J. COUTURE."

(Indorsement on back of above check as follows):
    "James B. Tailer, Manual Art Hard. Co."

"OCEAN PARK BANK 90–193
    "Commercial                          Savings
            "Santa Monica Branch.
        "Santa Monica, Cal., Sept. 25, 1922.  No. 177
    "Pay to the order of Manual Arts Plumbing Co.,
    for J. B. Tailer
    $318.00 Three Hundred Eighteen and xxx/100 Dollars.
                        "THE SLINGLUFF-COUTURE CO.
                            "EMILE J. COUTURE."

(Indorsement on back of above check as follows):
    "Manual Arts Plumbing Co.  J. B. Tailer."

Tailer, instead of delivering these checks to the Manual Arts Plumbing Company, presented them to the bank himself and, after indorsing his own name on each of said checks, and forging the name of the Manual Arts Plumbing Company to the check which was made payable to said company, and the words "Manual Arts Hardware Company" to the other, received the money thereon, and absconded. He never paid the money, or any part thereof, either to plaintiffs or to the Manual Arts Plumbing Company. Upon this state of facts the trial court made findings in favor of the plaintiffs and from a judgment predicated upon said findings of fact the defendant bank has appealed.

The rights of the parties hereto are governed entirely by the terms of the two checks, and cannot in any way be affected or modified by any undertaking or agreement between the plaintiffs and Tailer, nor by reason of the purpose for which the checks were given by the plaintiffs to Tailer, in the absence of any knowledge by the bank of such agreement or purpose. The bank was authorized to act upon the directions given by the plaintiffs as these directions appear upon the face of the checks. If the checks were authorizations on the part of Tailer to receive from the bank the amounts stated in the checks, then the payment of said checks by the bank was legal and the plaintiffs cannot recover in this action. This would be so even if Tailer forged the name of the Manual Arts Plumbing Company on one check and that of the Manual Arts Hardware Company on the other. For if the checks can be legally construed as

authorizing Tailer to receive the amount named in the checks from the bank, then the indorsement of the Manual Arts Plumbing Company to either of said checks was not necessary in order that the bank pay the amounts called therefor to Tailer.

It will be noted that each check contains an express direction to the bank to pay the amount of money therein named to the Manual Arts Company. In each check the name of the company is immediately followed by the words ''for J. B. Tailer.'' There is no question, had the bank paid the money called for by these checks to the regular payee named therein or upon its legal indorsement, that such payment would have been legal and would have bound respondents, as the drawers of said checks. And this would have been so in the absence of the indorsement, or any other action taken on the part of J. B. Tailer. In other words, the checks as drawn contained an express direction to the bank to pay the same to the Manual Arts Company. What effect, therefore, have the words ''for J. B. Tailer'' as they appear in the body of the checks? Appellant contends that the legal effect of these words in the checks, at least between the parties hereto, is to make Tailer the beneficiary of the proceeds of said checks. Whether he was the actual beneficiary of said proceeds would depend upon his relations with the Manual Arts Company. Let us suppose that by some working agreement between the plaintiffs and the Manual Arts Company the money called for by the checks was in fact the property or money of Tailer. In such a case there can be no doubt but that Tailer would have a beneficial interest in said money, and at most the Manual Arts Company would simply be the trustee of said funds when collected for Tailer. In such a case Tailer, as the real party in interest, could maintain an action against the bank for said proceeds in case the bank refused to pay the checks. Such action could be maintained by Tailer in his own name (Code Civ. Proc., sec. 367; Civ. Code, sec. 1559). On the other hand, by the agreement and understanding of the parties to said checks, Tailer might have no interest therein nor to the proceeds thereof. The evidence in this case shows that such was the agreement and understanding of the parties. But how was the bank to know just what the undisclosed agreement of said parties was? It had the right to act upon what ap-

peared upon the face of the checks as the same were drawn by the plaintiffs and presented to it by Tailer. Apparently, from the face of the checks, the money called for by the checks was ultimately to belong to Tailer. If this were in fact true, the bank would be under legal obligation to pay the same to him. Was the bank, before paying the checks, under the legal necessity of ascertaining the true relations of Tailer to the other parties to said check, or was it justified in acting upon the apparent relations of the parties as disclosed by the face of the checks? As we have before said, the terms of the checks determine the rights of the parties thereunder. The bank was not, therefore, under any legal obligation before paying the checks to ascertain whether the actual rights of the parties were different from their apparent rights as disclosed by the terms of said checks. Any other construction of the law applicable to this case would cast upon the bank an obligation and duty beyond that generally assumed by a bank toward its depositors. It was not the duty of the appellant bank to decide whether Tailer was the real or only the apparent beneficiary of the funds called for by the checks. It was authorized to act upon the apparent import of the checks as presented to it, and if it afterward were proven that the real facts were different from those appearing upon the face of the checks, then the loss, if any, should not fall upon the bank, but upon the plaintiffs, who drew the checks in the form in which they were drawn.

There is but little direct authority to be found upon the question of the legal effect of a check drawn in the form in which the checks involved herein were drawn. In the case of *Ridgely Nat. Bank* v. *Patton & Hamilton,* reported in 109 Ill., page 479, it was held by the supreme court of Illinois, where a check was drawn in favor of Patton & Hamilton for the account of Lewis Coleman & Co., that Patton & Hamilton were the trustees of Lewis Coleman & Co. But in that case the evidence showed that the check was drawn in payment of an account due Lewis Coleman & Co. This account was in the hands of Patton & Hamilton, attorneys, for collection and the debtor in payment of the account drew the checks in favor of the attorneys "for account of Lewis Coleman & Co." Had Lewis Coleman & Co., being the real parties in interest of said check, brought

suit thereon against the bank, we think that without doubt, at least under our system of procedure, they could have successfully maintained said action and recovered the amount due thereon from said bank. There is nothing contrary to our views above expressed to be found in *Brown* v. *Cow Creek Sheep Co.*, 21 Wyo. 1 [126 Pac. 886]. In that case the check involved directed the bank to "Pay to the order of Ed. Brown $2500 00/00 Twenty five hundred dollars. For Wilkes." In an action by Brown against the Cow Creek Sheep Company, the drawer of the check, it was claimed that the words "For Wilkes" rendered the check non-negotiable. The court, however, held that the presence of these words had no such effect, but that "they appear, on the contrary, to be merely a statement of the object for which the check is drawn, or the person or account to which the amount was to be charged." The relative position of the words "For Wilkes" in the check in that case is different from the position of the words "for J. B. Tailer" in the checks drawn by the respondents. They not only follow the direction in the check to pay to Brown the sum of $2500, but they are separated from the directing sentence of the check by a period. In fact, they are set off by themselves and the court could in that case reasonably hold that they amounted merely to a memorandum on the check showing "the person or account to which the amount is to be charged." In the present action the checks, as we have already seen, direct the bank to pay to the Manual Arts Company "for J. B. Tailer" the amount designated in each check respectively. The check in the case just cited materially differs from the checks involved herein. The case of *Turner* v. *Eldridge*, 6 Ala. 821, involved a promissory note drawn as follows: " . . . I promise to pay to Jas. W. Camp, for the benefit of Alfred Turner, five hundred dollars . . . H. B. Turner." Camp thereafter assigned said note to Eldridge, who later instituted suit against H. B. Turner, the maker. The only point claimed to have been decided by the court was that the legal effect of the instrument was merely a promise to pay Camp and that the beneficiary was not a necessary party to said action. That case actually holds that Alfred Turner was the beneficiary of the proceeds of said note. If he were such beneficiary, he was the real party in interest, and could have maintained an action thereon in this state. The respondents

have not presented to our attention any authorities which sustain their position. We agree that there is but little direct authority to support the position of appellant, but for the reasons before expressed we are of the opinion that the general rules of law applicable to the facts in this case are in favor of the contentions of the appellant. We therefore conclude that in causing said checks to be made payable to the Manual Arts Company for J. B. Tailer, the latter was, as between the drawers of said check and the bank upon which they were drawn, the beneficial owner of the proceeds of said checks, and that the payment of the checks to Tailer by the bank was justified by the terms of said checks.

From another angle of the case we think that the respondents should not be permitted to escape their responsibility upon said checks. The checks as drawn are undoubtedly uncertain in their directions as to whom the money for which they were drawn was ultimately to belong. By drawing these checks in the manner in which they did, thus rendering it uncertain from their terms whether they were for the benefit of the Manual Arts Company or J. B. Tailer, and then delivering them into the possession of the latter, the respondents placed it in the power of Tailer to mislead the bank in paying the money to him. In such a case the plaintiffs should suffer for the wrongful acts of Tailer. "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (Civ. Code, sec. 3543.) The bank could have reasonably inferred, with Tailer in possession of the checks in the form in which they were drawn, that the respondents intended that the proceeds of the checks should belong to him and therefore concluded that it was authorized to pay to him the amount called for by the two checks. It is well settled that where an instrument is uncertain as to its terms it is to be construed most strongly against the party thereto who caused such uncertainty to exist. (Civ. Code, sec. 1654; *Payne* v. *Neuval,* 155 Cal. 46 [99 Pac. 476]; *Union Const. Co.* v. *Western Union Tel. Co.,* 163 Cal. 298 [125 Pac. 242]; *Bennett* v. *Potter,* 180 Cal. 736 [183 Pac. 156].)

The judgment is reversed.

Richards, J., Shenk, J., Langdon, J., Preston, J., and Seawell, J., concurred.

WASTE, C. J., Concurring.—I concur in the judgment of reversal upon the ground last stated in the majority opinion. By drawing the checks in the manner in which they did, and placing them in the possession of J. B. Tailer, the respondents put it within his power to mislead the bank into paying the money to him, and they should therefore suffer for his wrongful act.

I am not sufficiently convinced as to the treatment of the first point in the opinion, which, in effect, holds that the checks can be legally construed as authorizing Tailer to receive the amount named from the bank, to agree with the conclusion therein stated, for which reason I express no opinion on that matter.