[Civ. No. 14993.   Second Dist., Div. Two.   Mar. 12, 1946.]

A. H. KNOX, Respondent, v. JEAN WOLFE et al., Appellants.

Robert F. Shippee and Benjamin, Lieberman & Elmore for Appellants.

Sherman & Sherman, Chas. R. Thompson and Glenn M. Still for Respondent.

WILSON, J.—Bank of America National Trust and Savings Association, the owner of the premises in question, leased the same to respondent for five years ending December 15, 1943, for the purpose of operating a cocktail and restaurant business. The lease was prepared by the bank's attorney under the direction of the officers and agents of the bank. Respondent installed furniture, fixtures and equipment at a

cost of more than $22,000. The lease contained a provision that if the lessee held possession after the expiration of the term of the lease with the consent of the lessor the lessee should become a tenant from month to month "at the monthly rental of . . . and upon all of the terms and conditions herein specified." At the expiration of the five-year period, and for some months prior thereto, one Philip L. Wilson was the owner of the premises and was the lessor by reason of mesne assignments and transfers from the original lessor. Respondent continued to occupy the premises until the expiration of the term of the lease and thereafter, with the oral consent of the owner-lessor Wilson, to and including August 31, 1944.

The court found that shortly before the expiration of the term of the lease on December 15, 1943, it was orally agreed between respondent and the lessor Wilson that respondent would continue his tenancy of the premises under the lease on a month to month basis at the same rental as specified in the lease; that respondent relied on said oral agreement and the provisions of the lease in continuing the occupancy of the premises after December 15, 1943; that the lessor at all times after said date and to and including August 31, 1944, accepted the monthly rental of the premises from respondent on the same basis as during the term of the lease; that the lease was extended or renewed to and including August 31, 1944; that respondent was at no time in default under the terms of the lease; that by assignments and transfers the premises and the lease were transferred to appellants, Wolfe and Bisno; that they became the owners thereof on or about July 3, 1944, and succeeded to the interest of said Wilson with full knowledge of the lease and all of its provisions and with full knowledge that respondent was in possession of the premises and of respondent's rights under the lease; that appellant Rabuchin is the lessee of the premises under appellants Wolfe and Bisno.

After Wolfe and Bisno became the owners of the property a dispute arose between them and respondent concerning the construction of portions of the lease which will be discussed hereinafter, and respondent filed an action for declaratory relief for the purpose of obtaining a judicial determination of the rights and liabilities of the respective parties.

In addition to fixtures that had been attached to the premises, the right to the removal of which was one of the subjects of controversy in the declaratory relief action, respon-

dent had installed for the necessary operation of his business various detachable and removable equipment such as freezers, refrigerators, stoves, steam tables, dishes and kitchen utensils. While he was in the process of removing these unattached articles and some of the attached fixtures appellants, by means of force and violence, prevented him from taking possession of both attached and unattached articles and forcibly prevented him from removing the same from the premises. Respondent thereupon filed a claim and delivery action to recover possession of said personal property, for damages for its detention, and for exemplary damages by reason of the malicious and oppressive acts of the appellants in forcibly taking possession of the same. The claim and delivery action was against appellant Wolfe, the nominal owner of the premises, appellant Bisno, for whom she held title, and appellant Rabuchin, who became their lessee after respondent had vacated the premises.

By stipulation the two actions were consolidated and a joint judgment was rendered in favor of respondent from which appellants have taken this appeal.

1. *Construction of the provisions of the lease relating to removal of fixtures.* The lease was on a printed blank form to which were added several typewritten provisions. Paragraph 5 of the printed form provides that all alterations, additions and improvements made in the premises, including fixtures, except unattached movable business equipment, shall be the property of the lessor and shall remain upon and be surrendered with the premises, ''except that lessee will ascertain from lessor within thirty days before the end of the term of this lease whether lessor desires to have the premises or any part or parts thereof restored to their condition when the premises were delivered to lessee and if lessor shall so desire then lessee shall restore said premises or such part or parts thereof before the end of the term of this lease entirely at lessee's own cost and expense. . . .''

Paragraph 26 of the lease, typewritten, recites that in the operation of lessee's business it will be necessary to install fixtures and equipment, including bar and back bar, and provides that ''Anything contained herein to the contrary notwithstanding, it is agreed that upon the installation of said bar and back bar, said bar, back bar and all equipment attached thereto and forming a part thereof, and all other equipment attached to the premises by screws, bolts, nails or other-

wise, shall become a part of the premises herein demised, and the property of the lessor, the lessee waiving and relinquishing to the lessor any claim or interest therein. . . .''

This was followed by an unnumbered paragraph stating that by Paragraph 26 it was agreed that certain furniture, fixtures and equipment installed by the lessee should become the property of the lessor, followed by this provision: ''It is agreed between the parties hereto that upon the expiration or sooner termination of the within lease, or any extension or renewal hereof, the lessee, may, provided the lessee be not in default under any of the terms, covenants or conditions of this lease, request the lessor to reconvey the right, title and interest acquired by the lessor by virtue of the provisions contained in paragraph 26 of the within lease to the lessee provided however, that in such event the lessee shall at the lessee's own cost and expense, restore said premises and every part thereof to the condition existing prior to the commencement of the term of the within lease, and upon completion of such restoration, the lessor shall reconvey the interest of the lessor in and to said articles to the lessee in accordance with the provisions of this paragraph.''

Since Paragraph 5 was a portion of the printed form it will be disregarded in any particular in which it is repugnant to the typewritten portion of the lease. (Civ. Code, § 1651.) The typewritten Paragraph 26, which provides that equipment attached to the premises by screws, bolts, or otherwise, shall become the property of the lessor, is expressly modified by the unnumbered paragraph to the effect that the lessee may request the lessor to reconvey the title thereto, whereupon the lessee shall, at his own cost and expense, restore the premises to their previous condition.

The following rules of construction found in the Civil Code are applicable to the lease: It must be so interpreted as to make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties. (§ 1643.) Particular clauses are subordinate to the general intent of the lease. (§ 1650.) The lease being partly typewritten and partly printed, the typewritten parts control the printed parts; and any part either written or printed with a special view to the intention of the parties will control those portions which appear in the printed form. (§ 1651.) Repugnancies must be reconciled, if possible, by an interpretation that will give

some effect to the repugnant clauses, subordinate to the general intent and purpose of the entire contract. (§ 1652.) Since the lease was prepared by and under the direction of the lessor, its language must be interpreted most strongly against the lessor (§ 1654), and any doubt or ambiguity, if such there be in the lease, must be resolved against the lessor. (*Hunt* v. *United Bank & T. Co.*, 210 Cal. 108, 116 [291 P. 184]; *Weil* v. *California Bank*, 219 Cal. 538, 541 [27 P.2d 904]; *Couture* v. *Ocean Park Bank*, 205 Cal. 338, 344 [270 P. 943, 61 A.L.R. 267]; *Payne* v. *Neuval*, 155 Cal. 46, 50 [99 P. 476].)

■ By reason of the provisions of Paragraphs 5 and 26 appellants claim title to the bar, the back bar, and all other equipment that had been attached to the premises by respondent by means of screws, bolts or nails. But the lease must be construed as a whole and must be interpreted in such manner as to give effect to the intention of the parties as indicated by the contents of the document (*Hunt* v. *United Bank & T. Co.*, *supra*, at p. 115), including the unnumbered paragraph. ■ Where a lease provides that the tenant may remove the fixtures which it installs and the tenant remains in possession with permission of the lessor from month to month after the expiration of the lease, the continued occupancy is regarded as an extension of the lease and the parties are deemed to have assented to the terms of the original lease, including the right to remove the fixtures. (*Woods* v. *Bank of Haywards*, 10 Cal.App. 93, 96 [106 P. 730]; *Hudson* v. *Zumwalt*, 64 Cal.App.2d 866, 874 [149 P.2d 457].)

■ To assume that the intention of the parties was different from that expressed in said paragraph would be to alter the contract by construction or to make a new contract for the parties. By the plain and unambiguous terms of the lease, considering it in its entirety, respondent had two options and was privileged to exercise either: (1) To vacate the premises and leave the attached fixtures therein, unless the lessor desired otherwise, as provided in Paragraph 5; or, (2) under the terms of the unnumbered paragraph, to request the lessor ''to reconvey the right, title and interest acquired by the lessor by virtue of the provisions contained in Paragraph 26.'' If he exercised option (1) and the lessor did not request otherwise, he was not obligated to do any work on the property but could have surrendered it in the condition in which it existed when he departed. If he chose option (2)

he was required to restore the premises at his own expense to the condition existing at the commencement of the term of the lease, and at the completion of the restoration the lessor was obliged "to reconvey the interest of the lessor in and to said articles to the lessee in accordance with the provisions of this paragraph."

If either Paragraph 5 or Paragraph 26 should be construed to vest in the lessor the absolute and incontrovertible title to the attached fixtures the latter part of the unnumbered paragraph beginning with the words "in such event" would be meaningless. The language following those words requiring the lessee to restore the premises to their previous condition would have no meaning or significance whatsoever if the lessee did not have the option to demand the reconveyance of the fixtures. If the fixtures were not removed there could be no restoration. Likewise, if the lessee were without right to request or to require a reconveyance, the provision obligating the lessor to reconvey said articles to the lessee would be vacuous. The only manner in which the lease may be interpreted so as to give effect to all of its provisions is that the unnumbered paragraph so qualifies Paragraphs 5 and 26 that, notwithstanding said two paragraphs, the lessee may assert the right given him by the unnumbered paragraph.

The lessee was not in default and he gave timely notice that he intended to avail himself of the rights contained in said paragraph to restore the premises to the condition in which he found them at the commencement of the term of the lease and to remove the fixtures and equipment as his property. Having exercised the option afforded to him by the lease he was entitled to remove, without hindrance from appellants, all equipment from the premises, including that which was attached thereto by screws, bolts or otherwise.

■ 2. *Did a new lease or tenancy result from lessee's holding over after the written lease expired?* Several factors assist in answering this question: (1) The lease specifically provided that if the lessee should hold possession after the expiration of the term with the consent of the lessor the lessee should become a tenant from month to month *"upon all of the terms and conditions herein specified."* (2) The privilege granted to the lessee by the unnumbered paragraph could be exercised by him at the expiration of the lease "or any *extension or renewal*" thereof. (3) Prior to the expiration of the term of the lease an express oral agreement was

made between the lessor Wilson and respondent that the latter might continue in possession of the premises under the lease on a month to month basis at the same rental specified in the lease. There was no modification of any of the provisions of the lease and no new agreement was made. (4) Respondent continued the payment of rent to the owners-lessors to and including August 31, 1944, at the same rate as he had paid during the term of the lease, and they (Wilson until he sold and Wolfe and Bisno after they acquired the premises) accepted payment without objection. (5) Appellants' recognition of respondent's possession under the lease is indicated by the notice terminating tenancy given by appellant Wolfe, in which she notified respondent that on August 31, 1944, "your *lease* or tenancy" will terminate.

The law as well as the facts sustain respondent's position that his holding over was a continuation of possession under the lease. (Civ. Code, § 1945.) When a tenant under a lease remains in possession of the leased premises with the permission of the lessor from month to month after the term expires a new tenancy is not created but the original tenancy is deemed to have been extended (*Woods* v. *Bank of Haywards,* 10 Cal.App. 93, 96 [106 P. 730]); and where a lease gives an option to the lessee "to renew" the lease for a specified term without requiring the execution of a new lease, the extension is a continuation of the tenancy under the original lease. (*Howell* v. *City of Hamburg Co.,* 165 Cal. 172, 177 [131 P. 130]; *Realty & Rebuilding Co.* v. *Rea,* 45 Cal.App. 673, 677 [188 P. 621].) The case of *Earle* v. *Kelly,* 21 Cal. App. 480 [132 P. 262], relied on by appellants, is not in point. In that case the lease was for the period of five years, and the lessee and his assignees continued in possession for 16 years after the expiration of the term, during which time the amount of rental was changed three times. Several important provisions appearing in the instant lease were absent from the lease which was considered in the Earle case: (1) The lessee was not given the right to remove the building which he had placed on the premises; (2) there was no provision that the holding over by the lessee would be on the same basis or under the same rental as under the original lease; (3) no agreement was made between the lessor and the lessee at or before the expiration of the term, as there was here between respondent and lessor Wilson; (4) the lease did not provide that the holding over was a continuing ten-

ancy under the lease. In *Wadman* v. *Burke*, 147 Cal. 351 [81 P. 1012, 3 Ann.Cas. 330, 1 L.R.A.N.S. 1192], there was no provision for the removing of trade fixtures attached to the premises by the lessee, and at the expiration of the lease a new lease was executed upon different terms, without reserving the right in the lessee to remove the fixtures. By reason of the factual differences between the other cases cited by appellants and the case at bar they fail to sustain appellants' claim that a new tenancy was created by the holding over from month to month after the termination of the lease.

3. *Damages for detention of personal property.* ■ The court found the total value of the personal property detained by appellants to be $3,100 and that the rental value was $250 per month. Judgment was rendered for $1,500 covering the period between September 1, 1944, and the last day of the month preceding the rendition of judgment, and for $250 per month thereafter as long as the property should be detained.

When respondent ascertained that he would not be permitted to retain the premises he arranged for another location and intended moving his equipment thereto, and was in the process of removing it when he was prevented from so doing by the actions of appellants. The war restrictions in force at that time made it practically impossible for him to obtain similar equipment for use in his new establishment, and the evidence was to the effect that the rental value of the property was therefore more than it might have been under normal conditions. Evidence was given by a witness as to the reasonable rental value, his estimate having been based both on a percentage of the value of the property and on a percentage of the volume of receipts of respondent during the time he had occupied the premises. His estimate was more than the amount allowed by the court, and was not contradicted by other evidence. The claim that the amount allowed is excessive is without merit.

■ Appellants objected to the evidence on the ground that the witness was not qualified to express an opinion upon the subject then before the court. For twenty years he had acted as a receiver and trustee in bankruptcy and in state court receiverships, appraisements, insurance adjustments, and in various forms of liquidation. He had handled equipment such as that involved in the action and had examined the property and knew its condition. While he had not rented

similar property, he had discussed rentals with other persons and particularly with persons who purchased similar property from him in his official capacity, and was familiar with the profits that purchasers made from such property. There is nothing in the record to indicate a lack of qualification on the part of the witness. The qualification of an expert witness "is a matter within the sound discretion of the trial court and its ruling will not be disturbed on appeal unless a manifest abuse of that discretion is shown." (*Hutter* v. *Hommel,* 213 Cal. 677, 681 [3 P.2d 554].)

4. *Malice and exemplary damages.* ■ While appellants Wolfe and Bisno were negotiating for the acquisition of the property they led respondent to believe that they would give him a new lease. After they had acquired title they offered him a lease if he would give them a half interest in the business. Upon his refusal to accede to this demand he was served with a notice terminating his tenancy. While he and his employees were engaged in removing his property, both the attached fixtures and the unattached personal property (to the latter appellants had no claim whatsoever), Bisno, with four other men, by intimidation and threats of violence, prevented the removal of the property. The allowance of exemplary damages was justified by the fact that appellants had been guilty of oppression, intimidation and malice. (Civ. Code, § 3294; *Perlick* v. *Pacific Discount Corp.,* 53 Cal.App.2d 136, 147 [127 P.2d 647]; *Gilbert* v. *Peck,* 162 Cal. 54, 60 [121 P. 315, Ann. Cas. 1913C 1349].) ■ The court found that appellants acted arbitrarily, maliciously and oppressively, employing the use of "strong armed men" to coerce and intimidate respondent, and assessed exemplary damages in the sum of $500. The evidence sustained the findings and, considering all of the circumstances shown by the record, the amount allowed is not excessive. This feature of the case would have been avoided if appellants had resorted to the court for an injunction to prevent the removal of the property instead of engaging in unauthorized procedure of their own fashioning.

5. *Did the court err in issuing the injunction?* ■ Included in the judgment was a clause restraining appellants from interfering with respondent in the restoration of the premises and therefore preventing his acquisition of title to the furniture, fixtures and equipment that he had placed therein. Neither of the complaints prayed for an injunction

but each contained a prayer for general relief. In each case injunctive relief was necessary to a complete determination of the controversy. Respondent's tenancy having been terminated, his right to remove the fixtures, if it existed at all, was immediate.

In an action for declaratory relief an injunction ancillary to the relief sought is appropriate and may issue to preserve the rights of the parties. (Code Civ. Proc., § 1060; *James* v. *Hall*, 88 Cal.App. 528, 535 [264 P. 516].) Both declaratory and coercive or executory relief may be granted in the same action. (*Coyne* v. *Spellacy*, 12 Cal.2d 284, 286 [83 P.2d 715]; *Cook* v. *Winklepleck*, 16 Cal.App.2d Supp. 759, 764 [59 P.2d 463]; *Vaughan* v. *Roberts*, 45 Cal. App.2d 246, 256 [113 P.2d 884].) Future rights may be determined when a declaration of the present and actual controversy is dependent upon an adjudication of such future rights. (*Rolapp* v. *Federal B. & L. Assn.*, 11 Cal.App.2d 337, 341 [53 P.2d 974].) Since the actual controversy in the declaratory relief action was whether respondent was entitled under the terms of the lease to remove the fixtures and equipment from the premises, the court, in addition to declaring the rights of the parties, fittingly proceeded to determine disputed issues of fact (*Tolle* v. *Struve*, 124 Cal. App. 263, 266 [12 P.2d 61]); and having assumed jurisdiction of the equitable controversy it rightly administered complete relief and made final disposition of the litigation. (*Zimmer* v. *Gorelnik*, 42 Cal.App.2d 440, 447 [109 P.2d 34].)

Under a prayer for general relief in an equitable proceeding, after an answer has been filed, the court may grant any relief conformable to the case made by the pleadings and the evidence although it may not be the relief asked by special prayer. (*Sonnicksen* v. *Sonnicksen*, 45 Cal.App.2d 46, 52 [113 P.2d 495].) When a defendant appears and answers the complaint the court, regardless of deficiencies in the prayer, may grant plaintiff any relief consistent with the evidence and the issues embraced within the pleadings. (*Martin* v. *Pacific Southwest Royalties*, 41 Cal.App.2d 161, 172 [106 P.2d 443]; *Nathan* v. *Dierssen*, 164 Cal. 607, 611 [130 P. 12]; *Goldsmith* v. *Board of Education*, 63 Cal.App. 141, 145 [218 P. 296]; *Johnson* v. *Polhemus*, 99 Cal. 240, 244 [33 P. 908]; *Zellerbach* v. *Allenberg*, 99 Cal. 57, 68 [33 P. 786].)

The judgment was not alone upon the controversy

pleaded in the action for declaratory relief, but it determined the ownership and right to possession of the personal property which was the issue in the claim and delivery action. The allegations of force and oppression contained in the complaint in the latter case and the evidence of intimidation and threats of violence made by Bisno and the men who accompanied him were sufficient, aside from other features of the actions, to warrant the issuance of the injunction. The belligerent attitude of appellants demonstrated the necessity of an injunction to prevent further violence and intimidation in their attempt to prevent respondent from removing his property from the premises.

Since the injunction is a part of the final judgment which adjudicated all of the rights of the parties, a notice or an order to show cause required before the issuance of an injunction, if issued prior to trial (Code Civ. Proc., §§ 527, 528), was unnecessary. Appellants having chosen to resort to other means than an orderly proceeding in a court of law for the purpose of enforcing what they asserted to be their rights, and which the court determined they never possessed, respondent was entitled to an injunctive judgment to protect him from further acts of force at their hands.

Appellants presented a timely motion for a new trial. It does not appear from the record that at the hearing of the motion they complained to the court concerning the terms of the injunction or the propriety of its having been issued. Their objection, if any they had, should have been presented to the trial court in the first instance instead of raising the question for the first time on appeal.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 9, 1946.