No. 19,644.

American Investors Life Insurance Company *v.* Green Shield Plan, Inc., et al.

(358 P. [2d] 473)

Decided December 30, 1960.    Rehearing denied January 23, 1961.

Messrs. Tippit & Haskell, Mr. John R. Evans, Mr. Bradford Wells, for plaintiff in error.

Messrs. Martin and Trine, Messrs. Williams, Stevens & Taussig, for defendants in error.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

This writ of error is directed to the alleged impropriety of a temporary injunction against plaintiff in error, to which we will hereafter refer as American Investors. Defendants in error Green Shield Plan, Inc., and Green Shield Life, Inc., will be referred to as Green Shield. The other defendant in error, Colorado Credit Life, Inc., did not appear in either the trial court or this court.

In August 1956, by Contract with Colorado Credit Life, Green Shield Plan, Inc., was designated as a general agent to sell insurance for Colorado Credit Life. In August 1958 the contract was amended to provide for the transfer to it of all of the insurance business generated by Green Shield Life Plan. The transfer was to take place after August 28, 1960, and the contract provided that at the time of the transfer of the business there would also be transferred to Green Shield admissible assets equal to reserve liabilities on the insurance policies involved. The contract and amendments were never submitted to the Colorado Insurance Commissioner for approval.

Green Shield performed all the obligations and conditions imposed upon it by the contract and amendments, and on September 14, 1960, made demand on Colorado Credit Life for the transfer of the insurance business and for the transfer of admissible assets in the amount of $427,135.23 to satisfy the reserve liabilities on the insurance policies generated by Green Shield. On September

Green Shield recorded its contract and amendments with the County Clerk and Recorder of Boulder County. In the meantime the ability of Colorado Credit Life to meet its obligations to policyholders was being questioned by the Colorado Department of Insurance. To overcome the difficulties which would ensue through Colorado Credit Life's apparent insolvency, negotiations directed by the Insurance Commissioner were being carried on for sale to American Investors of Colorado Credit Life. On September 21, 1960, American Investors entered into a contract with Colorado Credit Life, by and with the approval of the Colorado Insurance Commissioner, providing for the transfer of all Colorado Credit Life Insurance policies and certain of the Colorado Credit Life assets to American Investors upon the condition that the latter assume all of Colorado Credit Life's liabilities to policyholders. Many of the details, the terms and obligations of the contract are not pertinent to the matter involved here. The contract, however, did recognize that Green Shield had an outstanding claim in a substantial amount against Colorado Life.

Pursuant to the September 21st contract, the insurance and assets of Colorado Credit Life were transferred to American Investors, and on October 11, 1960, Green Shield filed a complaint in the District Court of Boulder County, seeking injunctive relief and damages against Colorado Credit Life. Green Shield alleged the execution and fulfillment by it of the Green Shield contract with Colorado Credit Life and alleged that pursuant to those contracts Green Shield, as agent, had written insurance in the face value of $7,476,800.00. It alleged that the reserve liabilities on those policies were $515,747.46 and that Colorado Credit Life and American Investors had refused to transfer assets in that amount to it. It alleged complete performance by Green Shield of its obligations under the contract and the recording of the contract with the Clerk and Recorder of Boulder County on September 20, 1960. After setting out the American

Investors-Colorado Credit Life contract, Green Shield alleged that American Investors had actual and constructive notice of the Green Shield-Colorado Credit Life contract and that it was entitled to have transferred to it the insurance and assets in the amount alleged. It further alleged that American Investors was about to transfer all of the assets and the insurance received from Colorado Credit Life to another insurance company and further, that American Investors intended to dissipate, liquidate and otherwise dispose of the assets so received. It alleged that it had no remedy at law and prayed for an injunction against disposing of the assets in any form, specific performance of the contract, and damages in an unspecified amount. On October 11, 1960, the Honorable William E. Buck granted a temporary restraining order embracing the relief prayed for and in addition ordering American Investors to transfer to the court all evidences of right, title and interest to those assets transferred by Colorado Credit Life to American Investors. No bond was required for this restraining order.

That temporary restraining order was dissolved on October 13, 1960, and on October 14, 1960, a new temporary restraining order was granted by the Honorable Dale E. Shannon, which restrained American Investors from transferring or in any way disposing of the assets transferred to American Investors by Colorado Credit Life. The order provided for self-dissolution, or, in the words of the court, that it "would be null and void," if American Investors did any one of the following acts: (a) transferred assets in the market value of $515,747.46 to Green Shield, (b) transferred to Green Shield all of the assets of Colorado Credit Life which were transferred to American Investors, (c) posted a bond in the amount of $515,747.46 with the court, or (d) entered into an agreement with Green Shield in accordance with a letter attached to the temporary restraining order. Bond was set in the amount of $10,000.00 by the court.

On October 17, 1960, American Investors filed a spe-

cial answer for the purposes of the hearing upon the preliminary injunction. In its special answer and only for the purposes of the hearing, American Investors agreed that the contract and amendment of contract had been fully performed and that Green Shield Life, Inc., was a subsidiary of Green Shield Plan, Inc. American Investors admitted that the insurance business generated by Green Shield had a total face value of $7,476,800.00 and that some amount was due and owing Green Shield on account of the reserve liabilities. American Investors admitted that Colorado Credit Life had refused to transfer the policies and assets on demand. It admitted that on August 31, 1960, Colorado Credit Life had assets sufficient to meet the obligations imposed by the amendments to the contract between Green Shield and Colorado Credit Life, but not sufficient assets to meet all the obligations of Colorado Credit Life. It did not admit that the assets then being held by American Investors were admissible assets. American Investors admitted that Colorado Credit Life was presently insolvent.

Hearing was had on the motion for preliminary injunction on October 17, 1960, the Honorable Dale E. Shannon granting a preliminary injunction in the same terms as the temporary restraining order with the same amount of security.

American Investors asserts a number of grounds upon which it relies in asking this court to dissolve the preliminary injunction. There is no need to discuss all of them, however, in view of our conclusion.

As a prerequisite to the issuance of an injunction, there must be a showing of real, immediate and irreparable injury to Green Shield which will occur pending final hearing, and that the injunction is necessary to prevent such injury or damage. At the hearing the evidence disclosed that the injury to Green Shield, if it can be characterized as injury or damage, occurred prior to the contract between American Investors and Colorado Credit Life and constitutes, for the most part, expenses

incurred in anticipation of taking over the new business. These damages were described by the president of Green Shield as expenses in obtaining licenses in seven states in anticipation of assuming the insurance business, which licenses might be jeopardized; rental of equipment to service the anticipated additional business, and construction of a building to accommodate the anticipated increase of business. The only other damage, which we can characterize as speculative as described by Green Shield, is that recent adverse publicity concerning Colorado Life was having a detrimental effect on renewal premiums, lapses in insurance, and policies surrendered for cash value. None of these alleged items of damage constitute an irreparable loss, and the preliminary injunction does not operate to eliminate or alleviate any of them.

█ Equity will not intervene where a plaintiff has a plain and adequate remedy at law. Everything that Green Shield asserts is measurable and compensable in money, and the evidence shows that American Investors is amply able to respond to a money judgment and is subject to the jurisdiction of the Colorado courts. In the strikingly similar case of *Behre v. Anchor Ins. Co. of New York,* 297 Fed. 986, we find the following pertinent language:

"The supplemental bill contains no allegation of the defendant's insolvency; but it does contain an allegation that the plaintiffs will suffer irreparable injury if the injunction is not issued. It alleges that the plaintiffs 'believe and aver that the defendant intends to transmit the said fund abroad' to the Jakor Insurance Company of Moscow, Russia, so that the plaintiffs will be unable to follow or recover it, by which we understand that the plaintiffs mean that, if the fund were transmitted to Moscow, they would be unable to recover it; but it would not be necessary to follow the fund to Moscow. *If the defendant is solvent, and wrongfully and with notice of the plaintiffs' rights pays over the money to some*

*one not entitled to receive it, the plaintiffs will be able to compel the defendant to pay over to the plaintiffs the moneys which belong to them, and it is impossible to see how in that event any irreparable damage has resulted.*

"If the money in the hands of this defendant belongs in fact to these plaintiffs, no one will deny that they have a remedy at law for its recovery. It is also true that equity sometimes interferes for the preservation of property which is the subject of litigation; but, when it does so, it is because such interposition is necessary for the protection of the property. Thus, for example, if the person in possession is insolvent, and there is consequent danger of the possible loss of the fund pending litigation, the injunction issues to preserve the status quo until the end of the litigation." (Emphasis supplied.)

It appears from the evidence presented to the trial court that not only does the injunction fail to prevent the alleged damage to Green Shield, but it is, in fact, causing greater damage to American Investors and other parties. This stems from the fact that American Investors took over from Colorado Credit Life not only its assets but also its liabilities on *all* insurance policies including the Green Shield policies. American Investors is called upon to pay claims on Colorado Credit Life policies, yet the preliminary injunction has the effect of preferring the Green Shield policyholders over all other policyholders. Should it develop there are insufficient assets to meet *all* the reserve liabilities, in such event Green Shield policyholders, unless it is later shown that they have a greater right than is generally accorded policyholders in situations of insolvency, would be entitled only to their pro rata share of the available assets. It is not disputed that to a large extent the assets obtained by American Investors from Colorado Credit Life are not "admissible assets," that is to say, they are not in the form which the law requires an insurance company to hold. These assets, therefore, must be converted at the best price obtainable and as soon as possible. The

injunction is so broad as to prevent their sale or conversion into "admissible" assets. Ironically, this also affects the obligation to Green Shield because both by the contract and by the law the assets, if and when transferred to Green Shield, must be in admissible asset form. Also it is to be noted from the findings of the trial court that the injunction is intended to and does, in fact, impose upon the assets acquired by American Investors an "equitable lien or constructive trust" in favor of Green Shield, and this prior to the hearing on the merits. Such a determination by the court is premature. Equitable liens arise by contract or conduct of parties, or if there is a showing of unjust enrichment or that one has funds which in equity he should not be allowed to retain. None of the latter grounds appears at this time. On the record as made in the hearing for injunction, the contract between Green Shield and Colorado Credit Life created no lien in favor of Green Shield. There was no showing of any earmarking of assets to cover the reserve liability on Green Shield policies. There was no lien, either by contract or by the court order, attached to any specific property, and Green Shield, while asserting a right to the transfer to it of assets of the value of $515,747.46, has by the injunction tied up assets assertedly carrying a face value of $2,800,000.00, none of which has been segregated.

The preliminary injunction, among other things, enjoined the American Investors from *dissipating* the assets obtained from Colorado Credit Life, although there was no evidence that dissipation was taking place or intended. Nevertheless a preliminary injunction in form and content designed to prevent American Investors from dissipating its assets and from transferring said assets for less than their fair value would be and is proper. The injunction should be modified to that extent.

The cause is remanded to the trial court with directions to dissolve the preliminary injunction and to enter

a modified injunction in harmony with the views herein expressed. The cause should then proceed on its merits.

Mr. Justice Knauss dissents.

Mr. Justice Knauss dissenting:

I respectfully dissent. It is my considered opinion that the instant case is analogous to *Western Auto Supply Co. v. Chalcraft,* 148 N.E. (2d) 592 (Ill. App. Ct. 1958). It there appears:

*"There is no impropriety in temporarily enjoining a defendant from collecting or receiving monies which equitably belong to plaintiff, and from using any of the funds for his own use.*

"Since it is charged that defendant is selling property belonging to plaintiff, * * * it appears the status quo must be preserved by injunction, *else the situation may proceed to the point where no remedy would avail anything.*

"When this situation exists, the trial court is not required to be minutely critical of the complaint, and this court will not readily interfere with the discretion allowed in such matters. *It is not required that plaintiff make out a case that is certain to prevail on final hearing, it is enough if there is shown a fair question as to the existence of the rights claimed, so that the court is satisfied their present state should be preserved until final hearing and disposition."* (Emphasis supplied.)

See, also, *Grossman v. Grossman,* 304 Ill. App. 507, 26 N.E. (2d) 678; *Holloway v. Evans,* 55 N.M. 601, 238 P. (2d) 457; *Knox v. Wolfe,* 73 Cal. App. (2d) 494, 167 P. (2d) 3.

Here, as the majority notes, Green Shield contracted with Colorado Credit Life, both Colorado Insurance corporations, to receive admitted assets, obviously pursuant to the laws of Colorado, which differ from the Texas Statutes governing insurance companies, the requirements of Texas law being less restrictive. American

Investors is a Texas insurance corporation which has been ordered by the Insurance Commissioner of Texas to convert the assets obtained from Colorado Credit Life into admitted assets under the laws of Texas. If American Investors obeys this order and acquires assets admitted under the law of Texas, but not admitted under the law of Colorado, Green Shield in the event of a judgment in its favor would be precluded from recovering the very thing it contracted for. In order to maintain the status quo an injunction requiring American Investors to retain admitted assets under Colorado law sufficient to comply with the contract is proper.

I am of the opinion that the cause be remanded to the trial court with directions to dissolve the preliminary injunction and to enter an injunction requiring American Investors to maintain intact assets transferred to it by Colorado Credit Life and defined as admitted assets under the laws of Colorado, in the sum of $515,747.46.