[L. A. No. 1830.  In Bank.—October 16, 1908.]

JOHN BURR, Appellant, v. MACLAY RANCHO WATER
COMPANY, Respondent.  H. R. HILLE et al., Interveners and Respondents.

PERCOLATING WATERS—RESERVATION IN DEED OF ARTESIAN WATER.—A
clause in a deed of a specified lot of land reserving to the grantors
"all artesian water that may be developed on said land, and not used
thereon," does not extend to artesian water that may be necessary
for use on the land from which it may be obtained, nor to any
water except artesian water.  It reserves no right to enter on the
land to develop artesian water.

ID.—RIGHT OF GRANTEE TO USE UNDERLYING WATER.—Conceding that
the word "artesian," as used in such reservation, refers to underground water which, by reason of pressure, will rise above its natural level, though not to the surface of the ground, when the stratum
in which it lies is pierced by a well, the reservation does not restrict
the right of the grantee to take such water from the underground
strata and use it on his land situated over the strata.

ID.—GRANTEE OF DIFFERENT TRACTS OF LAND—WATER DEVELOPED ON
ONE TRACT—USE ON OTHER TRACTS.—A grantee of different lots
of land holding under separate deeds, each containing such reservation, would not have the right to take water situated under one of
his lots, for use on another lot not situated above the underground
water.  Where, however, all the lots are situated above the underground water, each lot is entitled to sufficient water from the basin
for the necessary use thereon, and the taking of water for all the
lots by means of wells on one lot, instead of from wells on each
lot, would be a mere technical and wholly unsubstantial departure
from the terms of the reservation, unless some special injury results
from the location of the respective wells.

ID.—MUTUAL RIGHTS OF OWNERS OF OVERLYING LANDS TO REASONABLE USE OF WATER—USE ON DISTANT LANDS.—Different owners
of separate tracts of land, situated over common strata of percolating water, may, each upon his own lands, take by means of wells
and pumps from the common strata, such quantity of water as may
be reasonably necessary for beneficial use upon his land, or his reasonable proportion of such water, if there is not enough for all;
but one cannot, to the injury of the other, take such waters from
the strata and conduct it to distant lands not situated over the same
water-bearing strata.

ID.—APPROPRIATION OF PERCOLATING WATERS—PARAMOUNT RIGHTS OF
OVERLYING LANDOWNER.—As between an appropriator of percolating water for use on distant land, and an owner of land overlying
the water-bearing strata, who was using the water on his land before

the attempt to appropriate, the rights of the overlying landowner are paramount. Such rights, however, extend only to the quantity of water that is necessary for use on his land, and the appropriator may take the surplus.

ID.—OVERLYING LANDOWNER NOT USING WATER—RIGHT AS AGAINST APPROPRIATOR FOR USE ON DISTANT LANDS.—After an appropriator of water from a common water-bearing strata has begun to take water therefrom to distant lands not situated over the strata, for use on such distant lands, the owner of other overlying land upon which he has never used the water, may invoke the aid of a court of equity to protect him in his right to thereafter use such water on his land, and thus prevent the appropriator from defeating his right, or acquiring a paramount right by adverse use, or by lapse of time. Such an appropriation for distant lands is subject to the reasonable use of the water on lands overlying the supply, particularly in the case of persons who have acquired the lands because of these natural advantages.

ID.—APPROPRIATOR HAS RIGHT TO USE OF SURPLUS WATER.—As against the owners of such overlying lands, either those who have used the water on their lands before the attempt to appropriate, or those who have not previously used it, but who claim the right afterwards to do so, the appropriator for use on distant land has the right to any surplus that may exist. If the adjoining overlying owner does not use the water, the appropriator may take all the regular supply to distant land until such landowner is prepared to use it and begins to do so.

ID.—POWER OF COURT TO REGULATE USE—PROTECTION OF PARAMOUNT RIGHT OF OVERLYING LANDOWNER.—In controversies between the owners of such overlying lands, and an appropriator of the water for use on distant lands, the court has the power to make reasonable regulations for the use of the water by the respective parties, fixing the times when each may take it and the quantity to be taken, provided they be adequate to protect the person having the paramount right in the substantial enjoyment of that right and to prevent its ultimate destruction. In the present case the judgment is directed to be modified in accordance with these rules.

APPEAL from a judgment of the Superior Court of Los Angeles County. M. T. Allen, Judge.

The facts are stated in the opinion of the court.

Harris & Harris, and Stephens & Stephens, for Appellant.

The facts established by the findings bring the case within the rule laid down in *Katz* v. *Walkinshaw*, 141 Cal. 116; 99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766; *McClintock* v.

*Hudson,* 141 Cal. 281; 74 Pac. 849; *Cohen* v. *La Cañada Land and Water Co.,* 142 Cal. 437; 76 Pac. 47.

Williams, Goudge & Chandler, and Hunsaker & Britt, for Respondents.

It was entirely competent for the court to apportion the water between the contending parties by fixing the time during which each should be permitted to take it; and this is so whether their rights were those of riparian owners, or appropriators of, or coterminous owners of lands underlain by, percolating water. (*Wiggins* v. *Muscupiabe L. & W. Co.,* 113 Cal. 182, 54 Am. St. Rep. 337, 45 Pac. 160; *Craig* v. *Crafton Water Co.,* 141 Cal. 178, 74 Pac. 762; *Rose* v. *Mesmer,* 142 Cal. 329, 75 Pac. 905; *Town of Suisun* v. *De Freitas,* 142 Cal. 353, 75 Pac. 1092; *Gutierrez* v. *Wege,* 145 Cal. 731, 79 Pac. 449; *Smith* v. *O'Hara,* 43 Cal. 376; *Salina Creek Irr. Co.* v. *Salina Stock Co.,* 7 Utah 460, 27 Pac. 578; *Katz* v. *Walkinshaw,* 141 Cal. 136, 99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766.)

SHAW, J.—The plaintiff sued to enjoin the defendant company from pumping water from its wells on land adjoining that of plaintiff and transporting such water to distant lands for irrigation and use on such remote lands. The interveners own some of this remote land and claim rights to receive the water pumped by the defendant, under contracts made with defendant to furnish them with water for use on their respective tracts of land. The plaintiff has wells on his land, from which he pumps water sufficient for irrigation and other uses thereon and the injury he complains of is the lowering of the water underneath the surface, caused by the pumping of the defendant's wells, whereby his wells are drained of water. The court, upon the facts found, concluded that the plaintiff was entitled to pump from his wells, for irrigation of one tract of his land containing forty acres, designated as block 191, for six consecutive days of twenty-four hours each, in each month, a constant flow of twenty-five inches of water, miners' measure, measured under four-inch pressure, that during this period the defendant had no right to pump any water, and that, during the intervening time, the defendant has the right to pump water from its wells

and carry the same to distant lands for sale and use thereon, to the amount of 125 miners' inches, constant flow. The interveners claim, and were declared entitled to claim, solely under the defendant. Judgment was given in accordance with these conclusions. The plaintiff appeals from the judgment upon the judgment-roll alone.

The lands of the plaintiff consist of three tracts, designated respectively as blocks 153, 190 and 191 of the Maclay Rancho Ex-Mission San Fernando, according to the recorded plat thereof, and embracing ninety acres. His wells are situated on block 191, which is practically all set out in fruit trees requiring irrigation. Until shortly before this suit was begun he had not irrigated the other tracts. The main controversy concerns the rights pertaining to block 191, but the plaintiff also claims the right to pump water from his wells on that block to irrigate the lands of the other two blocks if he should find it convenient to do so. He did for a short time irrigate 15 acres of block 190. The plaintiff claims that, upon the facts found, the court erred in limiting at all his right to take water by means of his pumps, and in adjudging to the defendant the right to take water from the adjoining lot by means of pumps, or otherwise than by the natural artesian flow of the wells, or to a greater extent than thirty inches of constant flow.

The lands of the plaintiff and a part of block 192 are all situated over the same body of underground percolating water. Concerning this body of water the finding is that underneath all the said lands, and extending to the foot of the mountains, three or four miles northerly thereof, are water-bearing strata of varying depths of sand, boulders, and coarse material, and lying over each stratum is an impervious stratum of clay or cement, extending towards, but not entirely to, said mountains; that across the said strata and running through the southerly portion of block 192, which lies immediately south of block 191, there is a dyke of material impervious to water; that the subterranean waters in the water-bearing strata are supplied by rains falling on the mountains to the north and east which, descending the surface of the mountain slopes to the base of the mountains, there find their way into the coarse material and from thence into said water-bearing strata, through which they percolate underneath the overlying

strata of clay or cement and under the lands of plaintiff and the northern portion of block 192, "down to the said dyke, by means of which the movement of the said water is arrested, and the waters impounded, forming a subterranean basin wherein the said subterranean waters are retained." The seven wells of the defendant are all situated on the part of block 192 north of this dyke, and pierce the said water-bearing strata and subterranean basin. The water pumped therefrom is all taken away to lands lying south of the dyke, a large portion of it being several miles distant therefrom and none of it overlying the subterranean basin aforesaid. The lands of the interveners lie from two to four miles south of said dyke.

The plaintiff acquired block 191 in 1886 and ever since January, 1887, he and his family have resided thereon. In that year he began planting orchards thereon and gradually increased the area thereof until 1897. In 1896 he bored five wells along the southern line of the block and put a pumping-plant therein, from which, until the defendant began to pump on block 192 in June of the year 1902, he pumped water to the amount of twenty-five miners' inches for six full days consecutively each month, using the same to irrigate said block, and the same being necessary for that purpose. This water was taken into his pumps in the wells at a depth of twenty-four feet below the surface, and it appears from the findings that his wells and pumps, as constructed, cannot take the water at a lower depth. He has no other water supply and the water is, of course, necessary to prevent the destruction of his orchards.

In June, 1902, the defendant began pumping from its wells on block 192, over the basin aforesaid, about 125 miner's inches of water and, until the suit was begun, continued to do so, transporting the water to the distant lands above mentioned and there distributing the same for irrigation and other purposes. Prior to this excessive pumping the water in plaintiff's wells had usually stood at a general level of nine feet below the surface. The consequence of the operation of the defendant's pumps as stated was that during the remainder of the year 1902, while the pumps were so operating, the level of the water in plaintiff's wells was reduced to twenty-seven feet, and during the year 1903 to thirty feet below the surface.

The trial occurred in May, 1904. At such times as the defendant did not operate its said pumps the water level in plaintiff's wells stood at fourteen feet below the surface in the year 1902 and at sixteen feet in the year 1903. While the defendant is operating its pumps it is impossible for the plaintiff to obtain any water from his wells by means of his pumps.

It is necessary to consider, briefly, certain contracts mentioned in the findings. All the land affected by this action is included in a tract of twenty thousand acres formerly owned by Charles Maclay, from whom all the parties and all the owners of lands to which the defendant supplies water from its wells, derive title. On September 9, 1885, Maclay conveyed this tract to five trustees who were to subdivide and sell it. They were to expend, and did expend, twenty thousand dollars in subdividing and marketing the land and in constructing dams, reservoirs, and conduits and in boring artesian wells. In the fall of 1885 they bored the seven wells aforesaid and obtained an artesian flow of thirty miners' inches of water therefrom, which, with water from other sources, they thenceforth distributed to some of the lands in the tract. From these wells the defendant is now pumping the 125 inches in controversy. In all the deeds made by the trustees, including those to the plaintiff and the interveners, there was a clause reserving to the grantors "All artesian water that may be developed on said land, and not used thereon." The defendant has succeeded to all the rights of the trustees in the water thus reserved.

Some importance seems to have been attached to this reservation in the court below, but we do not think it affects the rights in controversy in the case. It does not extend to the artesian water that may be necessary for use on the land from which it may be obtained, nor to any water except artesian water. It reserved no right to enter on the land to develop artesian water. Conceding that the word "artesian" has the meaning sometimes given to it and refers to underground water which, by reason of pressure, will rise above its natural level, though not to the surface of the ground, when the stratum in which it lies is pierced by a well, the reservation does not restrict the right of the plaintiff to take such water from the underground strata and use it on

CLIV Cal.—28

his land, situated as it is, over the strata. This is all that the plaintiff claims. The only limitation it would appear to impose is that where different blocks are obtained by separate deeds, each containing this reservation, it does not, in terms, give the owner the right to take water from the basin by wells situated on one of his blocks and use it upon the other. If the first tract had, and the second had not, underground water of the kind reserved, this would clearly be a substantial violation of the rights reserved. But the plaintiff's respective blocks of land are all situated over the basin in question and each block is entitled to sufficient water from the basin for the necessary use thereon. The taking of it all by means of wells on one lot, instead of boring wells on each and obtaining for each the necessary water from its own well, would be a mere technical and wholly unsubstantial departure from the terms of the reservation, unless some special injury results from the location of the respective wells. If the pumping by the plaintiff of all the necessary water for his three blocks from the wells on block 191, so near to the defendant's wells, would materially lower the water level in its wells, there might be the substance of an injury to the defendant. But the findings show that the lowering of the water level is caused by the excessive pumping of the defendant and not by the pumping done by the plaintiff. Even the simultaneous pumping of twenty-five inches by the plaintiff and a considerable quantity by the defendant, the amount not being stated, but presumably as much as the original thirty inches, which was customary prior to June, 1902, did not materially affect the water level. But at all events the most that the defendant could claim is that the plaintiff be required to take upon each block, separately acquired, the water used thereon, if the other method proves injurious.

So far as the use of the water upon block 191 is concerned, the case seems to be within the rule established in *Katz* v. *Walkinshaw,* 141 Cal. 116, 135, [99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766]. In that case it was decided that two owners of separate tracts of land, situated over common strata of percolating water, may, each upon his own land, take by means of wells and pumps from the common strata, such quantity of water as may be reasonably necessary for beneficial use upon his land, or his reasonable proportion of such

water, if there is not enough for all, but that one cannot, to
the injury of the other, take such waters from the strata and
conduct the same to distant lands not situated over the same
water-bearing strata. The court there said: "In controversies
between an appropriator for use on distant land and those
who own land overlying the water-bearing strata, there may
be two classes of such landowners: those who have used the
water on their land before the attempt to appropriate, and
those who have not previously used it, but who claim the
right afterwards to do so. Under the decision in this case
the rights of the first class of landowners are paramount to
that of one who takes the water to distant land; but the land-
owner's right extends only to the quantity of water that is
necessary for use on his land, and the appropriator may take
the surplus." In the case at bar the defendant, with respect
to its injurious pumping of the water, is in the situation of
an appropriator for use on distant land. With respect to
plaintiff's block 191, it is attempting to begin such appro-
priation after the plaintiff has been for many years using the
water on his land. Under the rule stated, therefore, the
right of the plaintiff to the quantity of water necessary for
use on block 191 is paramount to that of the defendant to
take the water to the distant land of the interveners and
others similarly situated. The defendant is entitled only to
take of the surplus after block 191 is supplied.

With respect to plaintiff's blocks 153 and that part of 190
upon which he has not used the water, but upon which he
claims the right hereafter to use it, a question is presented
which was expressly left undetermined in *Katz* v. *Walkinshaw*
and which was not therein involved. The plaintiff, with re-
gard to this land, stands in the position of the second class
mentioned in the above quotation. The plaintiff, when the
defendant began pumping the 125 inches in June, 1902, gave
it notice that the pumping was lowering the water level and
impairing his rights. The suit was begun in July, 1903, and
the facts found by the court show that no estoppel *in pais*
exists in favor of the defendants to prevent the plaintiff from
asserting, protecting, and enforcing such rights as he may
have to the water for use on blocks 153 and 190. The ques-
tion is therefore fairly presented whether or not, after an ap-
propriator of water from a common water-bearing strata has

begun to take the water therefrom to distant lands not situated over the strata, for use on such distant lands, the owner
of other overlying land upon which he has never used the
water, may invoke the aid of a court of equity to protect him
in his right to thereafter use such water on his land, and thus
prevent the appropriator from defeating such landowner's
right, or acquiring a paramount right, by adverse use, or by
lapse of time. It appears from the findings that the existence of this underlying water was known before the lands
were conveyed to the trustees by Maclay and that the plaintiff
bought his tracts from the trustees because of its situation
with respect to that water and relying upon said natural water
supply and that without this water the land is of little value.
Under these circumstances it does not seem reasonable or just
to adopt a rule that would deprive the buyer of such land of
the principal benefit of his purchase and the land of its chief
element of value. The land being so situated that it has the
natural advantages afforded by the underlying water, the
conditions are analogous to those affecting land riparian to a
stream, which, because of its situation with reference to the
stream, is given rights to the waters thereof, so far as necessary for use thereon, which are paramount to the right of
another riparian owner to divert the water to lands not
riparian. The reasonable rule here would be to hold that the
defendant's appropriation for distant lands is subject to the
reasonable use of the water on lands overlying the supply,
particularly in the hands of persons who have acquired it because of these natural advantages, and we therefore hold this
to be the law of the case with respect to the lands upon which
no water has been used by the plaintiff.

In the case of either class of owners of overlying lands,
the appropriator for use on distant land has the right to any
surplus that may exist. If the adjoining overlying owner does
not use the water, the appropriator may take all the regular
supply to distant land until such landowner is prepared to use
it and begins to do so. It is not the policy of the law to permit any of the available waters of the country to remain unused, or to allow one having the natural advantage of a situation which gives him a legal right to water to prevent another
from using it, while he, himself, does not desire to do so. The
established and settled law of riparian rights in running

streams, which have become vested rights, may compel a different rule with regard to such waters in some instances, but these rules of law do not, of necessity, control rights in percolating waters. The most that should be allowed in such circumstances is to give a party the aid of the courts to protect his right and prevent the destruction of his source of supply by excessive use or other cause. The court unquestionably has power to make reasonable regulations for the use of such water by the respective parties, fixing the times when each may take it and the quantity to be taken, provided they be adequate to protect the person having the paramount right in the substantial enjoyment of that right and to prevent its ultimate destruction.

The judgment of the court below, with respect to block 191, was apparently based upon the rule established in *Katz v. Walkinshaw*, 141 Cal. 116, 135, [99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766], and was made with the design to allow the defendant to take as much of the water, and no more, as should be compatible with the paramount right of the plaintiff. In view of the findings, however, we think the judgment, in its present form, might eventually prove insufficient for the protection of plaintiff's right. The watershed supplying the underground strata is of limited area, and in some years but little water is contributed to the subterranean basin, because of the light rainfall. The effect of the defendant's pumping for a period of a little over eighteen months was to lower the permanent water level, as it stood when the pumps were idle, as much as seven feet. By reason thereof the plaintiff is compelled to lift the water seven feet higher than before the defendant began its present appropriation. Perhaps, in view of the extreme necessity for water and the great benefit derived therefrom, this additional burden upon the plaintiff may not be unreasonable. But if the judgment permitting this pumping by the defendant is affirmed without modification, it will be final between the parties and the defendant will have a perpetual right to continue the drain upon the limited supply. This climate is subject to occasional periods of several successive years of comparative drouth. We have recently had a ten-year period of that kind, which was just closing at the time this pumping by defendant began. It is probable that, if another such period, or even a shorter one,

should occur, or possibly with a normal rainfall, the continuous pumping of 125 inches of water from this limited supply will continue to lower the permanent water level of the basin until the plaintiff will be unable to reach it with his pumps. It is not impossible that ultimately the basin will thereby be entirely emptied of water. The findings do not show the quantity of water that will be annually supplied to these underground strata by the average annual rainfall upon the watershed from which it comes. They are silent on this point. It is manifest that if the quantity taken therefrom exceeds the average annual amount contributed thereto, the underground store will be gradually depleted and eventually exhausted. This should not be permitted. The judgment should be so modified as to provide for, or permit, the prevention of such a catastrophe and to limit the amount taken by all the consumers to a quantity, as near as may be, equal to the average constant supply from the rainfall. It should also be framed so as to prevent the lowering of the permanent level to such an extent that the plaintiff will be unable to obtain by his pumps sufficient water therefrom for use upon his lands.

These observations apply with equal force to the right of the plaintiff to have the supply protected for future use upon the portion of his lands not hitherto supplied with water. The judgment makes no provision whatever for the protection of the right of these lands to share in the water.

It is therefore ordered that the judgment of the superior court be modified by adding thereto, immediately preceding the date line thereof, the following clauses:—

## X.

Provided, however, that in no event shall the defendant be allowed to take of the waters in the strata pierced by its wells, a quantity greater than is supplied thereto from the average annual rainfall upon the watershed contributing thereto and from other sources; nor shall it be allowed to take therefrom a quantity that will reduce the water level in plaintiff's wells, during the periods when the plaintiff is herein given the right to pump therefrom, to such an extent that the plaintiff, with pumps operating at the depth of his present pumps and with equal capacity, will be unable to obtain therefrom enough

water to properly irrigate his said block 191 during such period, not exceeding the quantity hereinbefore stated.

It is further adjudged and declared that the plaintiff, as the owner of said blocks 153 and 190, has the right to take and use of the said waters underlying said block, respectively, a sufficient quantity for irrigation and other uses thereon, or his due share, in case there is not enough for all equally entitled therefrom, at such reasonable times as it may be necessary and convenient to do so, and that such right is parcel of said lands; that he may take such water through and by means of wells situated thereon, and that he must, when he desires to use the same, give the defendant ten days' notice of the time or times when he will begin such use, and the defendant must thereupon at such times cease pumping its wells for a sufficient time to allow plaintiff to obtain enough water for one irrigation of so much of the particular block as may then require irrigation; that the continued pumping of said water in future by said defendant, as herein permitted, shall not be deemed adverse to the rights of plaintiff herein declared, whether such rights are, or are not, used by plaintiff, and that defendant be forever enjoined from asserting or claiming rights in such water paramount to those of plaintiff herein declared.

Nothing in this judgment shall be construed to prevent the defendant from pumping from its said wells on block 192, at the times when by this judgment it is allowed to pump therefrom, a quantity of water which, when added to the natural flow, if any, of said wells, will equal a flow of thirty inches of water measured under a four-inch pressure, and using the same on distant lands.

As thus modified the judgment shall stand affirmed.

Angellotti, J., Sloss, J., Henshaw, J., Lorigan, J., and Beatty, C. J., concurred.

Rehearing denied.