[Civ. No. 4023. Fourth Dist. Apr. 18, 1950.]

F. ROBERT ORCHARD et al., Plaintiffs and Appellants, v. CECIL F. WHITE RANCHES, INC. (a Corporation), et al., Defendants and Appellants.

Harris, Willey & Harris and Ronald B. Harris for Plaintiffs and Appellants.

Sidney J. W. Sharp, Herbert M. Braden and Lawrence W. Clawson for Defendants and Appellants.

MUSSELL, J.—Action for declaratory and injunctive relief as to percolating ground water.

McClure Valley, situated in the southwest corner of Kings and the northwest corner of Kern Counties, embraces a water shed of approximately 93,000 acres or 150 square miles. It is surrounded by ranges and hills, except for an opening in the Pyramid Hills at the southeasterly end of the valley, which opening is known as "Dagany Gap." It is approximately three-fourths of a mile wide and connects McClure Valley and the Kettleman Plains to the east and north.

The elevation of the land in the valley drops from the north and west in the general direction of Dagany Gap, thence on to Kettleman Plains and on down to the Tulare Lake area in the San Joaquin Valley, a distance of about ten miles. The elevation of the floor of McClure Valley west of Dagany Gap is between 600 and 700 feet. It is 550 feet in the gap, between 400 and 500 feet in Kettleman Plains and 181 feet at Tulare Lake.

Plaintiffs own lands in the McClure Valley beginning about a mile and one-half west of Dagany Gap and extending north and west. The defendants' lands adjoin those of plaintiffs west of the gap in McClure Valley and extend easterly through Dagany Gap and thence north and south on Kettleman Plains. At the time of the trial, the holdings of plaintiffs exceeded 4,600 acres and those of defendants were approximately 1,000 acres in McClure Valley, 320 acres directly in Dagany Gap and 4,000 acres on the Kettleman Plains.

On July 14, 1947, plaintiffs filed the action herein for declaratory relief, alleging, among other things, that all of their lands overlie an enclosed basin of percolating water; that three sides of the basin are surrounded by mountains, which constitute the drainage area which supplies the water to the ground waters of said basin; that across the fourth side, or end of the basin, there is a dike which impounds the waters percolating in said basin; that the defendants, on their land in McClure Valley, have a series of wells by means of which they pump from the percolating waters of said basin and transport the water so pumped through a conduit over said dike for the irrigation of lands outside of said basin and which do not overlie the percolating waters of the basin. It is alleged that the plaintiffs are pumping water from the pool for irrigation of their overlying lands and there exists a controversy as to the extent of the right of defendants to pump water from the underlying basin of percolating waters and transport the same for use on lands not overlying said pool. It is further alleged that plaintiffs are being deprived of their lawful use of said ground waters by the acts of the defendants and a decree is sought determining the rights of the parties in and to the underground percolating waters of the basin and for a permanent injunction restraining the defendants from pumping said underground waters and transporting the same to nonoverlying land.

A motion was made by plaintiffs for a reference of the issues

involved to the Department of Public Works, as provided in division 2, part 3, of the Water Code of California. The motion was denied. The action was tried by the court without a jury and from the judgment entered, both parties appeal.

The defendant Cecil F. White Ranches, Inc., was adjudged to have a prescriptive right to take from the underground percolating waters in McClure Valley not in excess of the maximum rate of 7,600 gallons per minute nor in excess of 11,040 acre feet per fiscal year and an injunction was issued against the defendants prohibiting them from taking of water in excess of the amounts above set forth and also required defendants to install and maintain measuring devices and to keep records, make reports to plaintiffs and to permit inspection of the measuring devices. It was further adjudged that plaintiffs and defendants had correlative rights to use the underground percolating waters located in McClure Valley and the court reserved jurisdiction to modify its judgment as to the use of the underground percolating waters on the respective lands overlying them in McClure Valley.

From the judgment so entered on May 20, 1949, plaintiffs appeal from the award of a prescriptive right of defendants to take annually 11,040 acre feet of water at a rate not in excess of 7,600 gallons per minute. Defendants appeal from that part of the judgment describing certain lands as not overlying the underground percolating waters and from the judgment granting an injunction providing for the installing of measuring devices, the furnishing of records and reports and the reservation of jurisdiction of the matter by the court.

The trial court found, among other things:

Finding (2): There is a body of underground percolating waters in the basin of McClure Valley, State of California, with a natural outlet or spillway in the Southeast corner of said valley, which said outlet is about three-quarters (¾) of a mile wide connecting and leading into what is commonly known as Kettleman Plains.

Finding (4): That the material and geological structural formation within Dagany Gap is sufficiently resistant to the movement of underground percolating waters so as to separate the field of underground percolating waters within McClure Valley from the field of underground percolating waters in Kettleman Plains and Kettleman Valley lying East of McClure Valley and East of Dagany Gap.

Finding (6): That the natural flow of the surface water and movement of the underground percolating waters in

McClure Valley is from the North and West in a Southeasterly direction and that any surface water or underground percolating waters in excess of the amount necessary to maintain the underground percolating waters in McClure Valley escape through the natural outlet of said valley, Dagany Gap, into the watershed of Kettleman Plains.

Finding (10): That defendant and its predecessors in interest since 1937 have maintained wells, which it has doubled in number since five years prior to the filing of this action, in McClure Valley and have used these wells to pump water from the underground percolating waters in McClure Valley and have transported said waters for use on distant lands in Kettleman Valley, which lands do not overlie the underground percolating waters in McClure Valley.

Finding (11): That for the year next preceding July 13, 1942, which date is five years before the filing of this action, and for years prior thereto, defendants' predecessors in interest pumped a maximum of 11,040 acre feet at a maximum rate of 7,600 gallons per minute water from the underground percolating waters in McClure Valley and transported the same and beneficially used the same on lands in the Kettleman Plains distant from and not overlying the underground percolating water field in McClure Valley.

Finding (12): That during the five years next preceding the filing of this action the defendant and its predecessors in interest continued to so pump and so use said water as aforesaid.

Finding (13): That the waters so pumped and so used by the defendant and its predecessors in interest were at all times done so with the full knowledge of plaintiffs and that such taking and use was open, notorious, continuous, uninterrupted, adverse and under claim of right.

Finding (15): That plaintiffs and defendants have a correlative right to the use of the underground percolating waters in McClure Valley which underlie their respective lands on their respective overlying lands, which lands are those hereinbefore described as overlying said underground percolating waters.

Finding (16): That ever since the installation of irrigation pumps in McClure Valley there has been a constant lowering of the ground water table in McClure Valley.

It is first contended by the defendants that there is no substantial evidence to support the court's finding as to

the existence of a barrier which separates the underground percolating waters of McClure Valley and Kettleman Plains and that the findings of fact and judgment in that connection are based on surmise, conjecture and speculation and not on substantial evidence.

There are many pages of testimony of Glenn Charles Ferguson, geologist and paleologist, on behalf of plaintiff, and two defense witnesses, Carl Holley, a civil engineer and hydrologist, and Willard Cutler, Jr., geologist and petroleum engineer, as to whether a barrier exists as found by the court.

Mr. Ferguson testified, among other things, that there is a fault (with a slippage of about 800 feet) lying immediately west of Dagany Gap. It was the opinion of Ferguson that this fault, together with the strata of sedimentary rocks, constituted a barrier and that this barrier was overlaid in the gap by 40 to 50 feet of alluvium. In 1947 Ferguson drilled two core holes in Dagany Gap and made studies of the formations encountered. He made a geological study of McClure Valley and testified that it is a structural basin or a syncline, being separated from the area to the east by the Pyramid Hills anticline and also by a large thrust fault bordering the western portion of the Pyramid Hills anticline; that in his opinion, based upon his studies, there is a barrier near Dagany Gap which prevents the ready flow of underground water from the McClure Valley easterly through Dagany Gap, with the exception of possibly 40 or 50 feet of alluvial in the gap itself.

Mr. Holley testified that he had bored test holes in the gap to a maximum depth of 110 feet and that to the depth of the test holes, there was no barrier; that the water percolated from one valley to the other. He admitted that there was material between the valley and Kettleman Plains which slowed up the velocity of water and that if there were not some material in the Dagany Gap which was sufficiently resistant to the movement of water, there would be no water in McClure Valley which could be pumped. He testified that a large volume of water had been pumped out of the McClure Valley and that there has undoubtedly been a material drawing down of the hydrostatic pressure during the last 10 or 11 years. He testified further that he had noticed the existence of alkali salts at the lower end of McClure Valley in the Dagany Gap and also in the southeasterly part of that basin and upon being asked to account for the presence of the alkali or salts, stated that they were due to high ground water. This indi-

cated, to some extent at least, that water was caused to rise in that locality by the obstruction in the Dagany Gap.

There was testimony by Mr. White that he drilled two wells in section 3, which were east of the fault line and did not complete them because the formation did not "look good." He also drilled two wells for experimental purposes in Dagany Gap in section 2, which were abandoned because of their small yield of water.

Mr. White, who was president of the defendant company, also testified that when he took possession of his property in McClure Valley in November of 1943, there were nine wells on the property west of Dagany Gap. These wells were operated 24 hours a day, 12 months out of the year, and the water therefrom was conducted in an open ditch to defendants' lands for irrigation purposes.

Robert Orchard, one of the plaintiffs, who had lived in the vicinity for 54 years, testified as to the history of wells in McClure Valley drilled at various times since 1917 and from the water levels given by him, it appeared that there was a material dropping of the water table between 1936 and 1946.

It was stipulated by the parties that the trial court might view the premises, and in the presence of counsel for both sides, Dagany Gap, the formations surrounding it, McClure Valley and the various properties and wells involved here were shown to and inspected by the court.

The question of whether there was a barrier in Dagany Gap such as to impede the percolation of water from McClure Valley through to Kettleman Plains was a question of fact for the trial court and we cannot say that there was no substantial evidence to support the court's finding with reference thereto. (*Dillard* v. *McKnight,* 34 Cal.2d 209, 223 [209 P.2d 387].) Furthermore, the trial court visited the premises and made a complete inspection thereof. The information obtained by him from such inspection and view of the premises is itself evidence and may be used alone or with other evidence to support the court's finding. (*Noble* v. *Kertz & Sons Feed etc. Co.,* 72 Cal.App.2d 153, 159 [164 P.2d 257].)

Defendants admit that findings numbered (2) and (6), heretofore referred to, are supported by the evidence, but contend that in view of these findings, the court was in error in its fourth and fifth conclusions of law, wherein it was held that the defendants' lands are distant lands to and do not overlie the underground percolating waters in McClure

Valley and wherein the court held that the underground waters percolating in Kettleman Plains and those percolating in McClure Valley are distinct, separate bodies of underground percolating waters. The evidence is that Kettleman Plains and McClure Valley are two separate watersheds. This was admitted by Mr. Holley, one of defendants' principal witnesses. It is apparent that there is a spillway through the mountain pass which separates these watersheds and through which waters in excess of the capacity of an upper reservoir discharge into a lower reservoir.

The trial court having found that a barrier existed in Dagany Gap, we see no error in the conclusion reached that the defendants' lands in Kettleman Plains are distant lands to and do not overlie the underground percolating waters in McClure Valley, and in the court's conclusion that the underground percolating waters in Kettleman Plains and those percolating in McClure Valley are distinct, separate bodies of underground percolating water.

An owner of land within the McClure basin has the right to take water from the ground underneath for use on his land within the basin or watershed. (*City of Pasadena* v. *City of Alhambra,* 33 Cal.2d 908, 925 [207 P.2d 17].) Ordinarily, such an owner does not have the right to take water out of the watershed for any purpose if such taking will deprive of water any lands within the basin. (*City of San Bernardino* v. *City of Riverside,* 186 Cal. 7, 15 [198 P. 784].) An owner or any other person having a legal right to surface or ground water may take only such amount as he reasonably needs for beneficial purposes. (*Katz* v. *Walkinshaw,* 141 Cal. 116 [70 P. 663, 74 P. 766, 99 Am.St.Rep. 35, 64 L.R.A. 236]; *Peabody* v. *City of Vallejo,* 2 Cal.2d 351 [40 P.2d 486]; Cal. Const., art. XIV, § 3.)

As between overlying owners, the rights are correlative and are referred to as belonging to all in common; each may use only his reasonable share when water is insufficient to meet the needs of all. (*City of Pasadena* v. *City of Alhambra, supra,* 926.) In that case it is also held, at page 925, that:

"Public interest requires that there be the greatest number of beneficial uses which the supply can yield, and water may be appropriated for beneficial uses subject to the rights of those who have a lawful priority. (*Peabody* v. *City of Vallejo,* 2 Cal.2d 351, 368 [40 P.2d 486].) Any water not needed for the reasonable beneficial uses of those having prior rights is excess or surplus water. In California surplus water may

rightfully be appropriated on privately owned land for non-overlying uses, such as devotion to a public use or exportation beyond the basin or watershed. (*Peabody* v. *City of Vallejo*, 2 Cal.2d 351, 368-369 [40 P.2d 486]; *City of San Bernardino* v. *City of Riverside*, 186 Cal. 7, 29, 30 [198 P. 784]; *Burr* v. *Maclay Rancho Water Co.*, 154 Cal. 428, 436 [98 P. 260]; *Katz* v. *Walkinshaw*, 141 Cal. 116, 135 [70 P. 663, 74 P. 766, 99 Am.St.Rep. 35, 64 L.R.A. 236]; see 26 Cal.Jur. 32 et seq., 273-274.)''

 In the case at bar, the evidence is that the defendants are exporting a large amount of water out of the McClure watershed and basin for use on lands east of the Dagany Gap and it is necessary to determine whether defendants have a right by prescription or appropriation so to do. Prescriptive rights are not acquired by the taking of surplus or excess water (any water not needed for the reasonable beneficial uses of those having prior rights) and an appropriation of such water for beneficial purposes may not be enjoined. (*City of Pasadena* v. *City of Alhambra, supra.*)

The evidence before us is that the quantity of water withdrawn from the McClure basin exceeds the average amount contributed thereto by rainfall and the level of underground water is being continuously lowered to such an extent that the underground store will be gradually depleted and eventually exhausted. The taking of water from McClure Valley for use on nonoverlying lands in excess of the amount required to maintain a safe level of ground water may be enjoined unless the defendants have gained a prescriptive or appropriative right thereto. The rights of plaintiffs to water thus taken may be and they were by the court's finding lost by adverse user which was actual, open and notorious, hostile and adverse to plaintiffs, continuous and uninterrupted for the statutory period of five years under claim of right.

The trial court found that for the year next preceding July 13, 1942, which date is five years before the filing of this action, and for years prior thereto, defendants' predecessors in interest pumped a maximum of 11,040 acre feet at a maximum rate of 7,600 gallons per minute water from the underground percolating waters in McClure Valley and transported the same and beneficially used the same on lands in the Kettleman Plains distant from and not overlying the underground percolating water field in McClure Valley; that during the five years next preceding the filing of this action the defendant

and its predecessors in interest continued to so pump and so use said water as aforesaid and concluded that the defendants have a prescriptive right to take and use water not in excess of this amount outside of McClure Valley.

These findings are supported by evidence that by 1937 defendants' predecessors in interest had drilled, or afterwards acquired, nine wells in the McClure Valley and that from that time on they ran all nine of the wells continuously 12 months out of the year, except for such period of time as was necessary to repair the pumps; that the water produced from these wells was run through a common ditch out through Dagany Gap and on to Kettleman Plains, where it was used to irrigate lands; that in 1944 defendants constructed a pipe line 24 inches in diameter and approximately two miles long to carry the water east through Dagany Gap and thus avoid the evaporation of approximately 40 per cent incident to transportation of the water in an open ditch. There was testimony that when this pipe line was first built and used it did not carry all of the water produced by the nine original wells; that the guaranteed capacity of the pipe line was 7,600 gallons per minute or 11,048 acre feet per year. The inference which the trial court drew from this evidence is that the defendants had a prescriptive right to water to the capacity of the pipe line. There was a conflict in the evidence as to the amount of water actually produced by the nine wells and transported through the gap and the trial court, having resolved the conflict in favor of the defendants, its finding in this respect will not be here disturbed.

The trial court, in its judgment, perpetually enjoined and restrained the defendants from taking underground percolating waters in McClure Valley in excess of 11,040 acre feet per fiscal year and in excess of the maximum rate of 7,600 gallons per minute and reserved jurisdiction of the action for the purpose of modifying its judgment upon a proper showing of the necessity thereof to the extent of prorating between the parties their use of the underground percolating waters of McClure Valley on their respective lands overlying said waters. We conclude that the reservation of jurisdiction was too narrow in its scope. In *City of Pasadena* v. *City of Alhambra, supra,* the controversy concerned the rights of overlying land owners and others taking ground waters. The principal takers of water were public utility corporations which were exporting water or used it within the basin or for municipal purposes or for sale to the public and

the appellant, who exported approximately three-fourths of the water produced by it to customers located outside of the area. The evidence showed that there had been an actual adverse user of water taken from the area and that there was an invasion, to some extent at least, of the rights of both overlying owners and appropriators commencing when the overdraft first occurred. The court held that the taking of water in excess of the safe yield, whether by subsequent appropriators or by increased use by prior appropriators, was wrongful and was an injury to the then existing owners of water rights, because the overdraft, from its very beginning, operated progressively to reduce the total available supply. And in that case although no owner was immediately prevented from taking the water he needed, the evidence demonstrated that a continuation of the overdraft would eventually result in such a depletion of the supply stored in the underground basin that it would become inadequate. It was further held that prescriptive rights were established by appropriations made in the area subsequent to the commencement of the overdraft; that such rights were acquired against both overlying owners or prior appropriators; that the overlying owners and prior appropriators also obtained, or preserved, rights by reason of the water which they pumped, and that the trial court properly concluded that the production of water in the unit should be limited by a proportionate reduction in the amount which each party had taken throughout the statutory period.

In the instant case there are no findings as to the amount of water which may be taken from McClure Valley without causing an overdraft of ground water in the basin. Plaintiffs are not immediately deprived of water needed, but a continuation of the overdraft may in the future result in exhaustion of the supply. As in the *Pasadena* v. *Alhambra* case, *supra*, the court should have retained jurisdiction to modify its judgment and orders as to the use of the ground water, both by overlying owners and those with prescriptive rights to take water for use on nonoverlying lands. Paragraph six of the judgment is, therefore, modified to read as follows:

"That this court reserves jurisdiction of this action for the purpose of modifying its judgment and orders, after notice and hearing, as the case may require, to the extent of prorating between the parties hereto their use of the underground percolating waters of McClure Valley, commonly known as Sunflower Valley, on their respective lands over-

lying said waters and the use of such underground waters for purposes of exportation to nonoverlying lands.''

As so modified, the judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied May 2, 1950.