**UNITED STATES v. FALLBROOK PUB-
LIC UTILITY DISTRICT et al.**

Civ. No. 1247.

United States District Court
S. D. California, S. D.

Aug. 15, 1951.

A. Devitt Vanech, Asst. Atty. Gen., Ernest A. Tolin, U. S. Atty., Los Angeles, Cal., William H. Veeder, Sp. Asst. to the Atty. Gen., by Betty Marshall Graydon, Asst. U. S. Atty., San Diego, Cal., for plaintiff.

Edmund G. Brown, Atty. Gen., of California and B. Abbott Goldberg, Deputy Atty. Gen. of California, for intervening defendant.

YANKWICH, District Judge (after stating the facts as above.)

The making of this motion is an opportune moment to state for the record certain matters as they appear from the files of this court. I am doing this as a judge of this court, because, despite the fact that Judge Weinberger is designated

to sit in the Southern Division, the Southern Division is a part of the Southern District of California.

There is one other matter that makes me speak, and that is this: It has become quite evident that if this case is tried, it will require the entire time of one judge. It will, therefore, be necessary for some of us to take over the calendar of regular work, as we have done in the past.

It will be my duty as Chief Judge, after September 1st, when the case is tried, to arrange with the other judges of this district, or with judges outside of the district, to relieve Judge Weinberger of the regular trial calendar, which cannot be "frozen" while this case is tried. For that reason, I am very much interested in knowing whether the case will proceed, whether it will be tried in the courtroom, in the American way, on the basis of evidence to be introduced here, or whether the issues are to be determined, also in the American way, in the Congress, or by congressional committee.

I

## The Government as Litigant

One significant fact is to be borne in mind: that under our system the Government of the United States has the same right as any other litigant to come into a court and to ask that its rights be adjudicated. This is a characteristic of the democratic process. And this is what the government has done by bringing this action.

In the complaint filed here on January 25, 1951, the Government asserts that, as successor in interest of the former owners of Santa Margarita Ranch, it acquired certain rights when it purchased that ranch. In paragraph VI of the complaint it is said: "As successor in interest of the Rancho Santa Margarita, a party to the above-mentioned adjudication proceeding and to the stipulated judgment, the United States of America is entitled to, and claims all rights, titles, interests, and privileges of said Rancho Santa Margarita."

Reference is made to a judgment of a state court which had adjudicated certain rights.

Incidental to the ownership, the Government claims the riparian rights, that is, the right of an owner in California to the undiminished flow of the river through the lands.

The Government alleges in this complaint that a dispute has arisen as to the rights to the water, between them and other persons.

In paragraph VIII of the complaint the Government states: "Those rights to the use of water described above have, since the acquisition of the property to which those rights are appurtenant, been applied to a beneficial and consumptive use by the United States of America in the performance of the varied functions of the military establishments more particularly mentioned in Paragraphs II and VII hereof. All of the water which was accorded to the Rancho Santa Margarita by the stipulated judgment is required to supply the requirements of Camp Pendleton, the United States Naval Hospital and the Naval Ammunition Depot. To meet the great demands arising from these military installations for military, agricultural and other needs, the United States, as against the defendants herein named, asserts that it has a paramount right to 35,000 acre-feet of water annually from the Santa Margarita River. That quantity of water must be derived not only from the surface flow which, as indicated, is intermittent, but must likewise be pumped from the great subterranean basin described in some detail in the earlier paragraphs. For the purpose of this cause the United States of America, adopting the findings of the Supreme Court of the State of California, considers and accordingly claims that the surface stream and subterranean basin constitute a single source of supply of water. During any period when the quantity of water exceeds the military demands described in this paragraph, it is utilized by the United States of America for agricultural purposes, as it was historically used by the Rancho Santa Margarita, predecessor in interest of the United States of America. Though the agricultural use of water varies as the demands for military uses fluctuate, the United States of America, however, as-

serts its rights to the full use of water for agricultural purposes as enjoyed by the above-mentioned Rancho Santa Margarita."

■■ In California pleading the prayer of the complaint is not a measure of the relief sought by the pleading. However, it is sometimes considered because ultimately the relief that a litigant is entitled to is the relief which his complaint sets forth, regardless of the prayer. That is why we say in California pleading the prayer is not a part of the complaint, if it appears from the body of the complaint what relief is sought.[1] Under Rule 8(a), Federal Rules of Civil Procedure, the complaint must contain "a demand for judgment for the relief to which he (the plaintiff) deems himself entitled." The prayer of the complaint before us is for a declaration of the rights of the parties. It merely seeks this: "That this Court declare and determine that all of the rights of the United States of America are paramount and superior to those of the named defendants by virtue of the riparian character of the lands above mentioned and the ownership of them by the United States, and by reason of its acquisition of the above-mentioned rights to the use of water and the application of those rights to military purposes."

Then there follows a statement to the effect that the water is being put to beneficial use.

It is quite evident, from this complaint that the Government of the United States has the right to come into this court and assert its water rights. When this is done, the lawsuit must be determined, as Mr. Justice Holmes once said, on the basis of evidence heard in court and "not by any outside influence."[2]

## II
## The Rights of the Congress

■ A Committee of the Congress of the United States has been investigating this lawsuit. A committee of the Congress of the United States has the right to investigate a suit brought by the Government of the United States, with the idea of determining whether the suit should be continued, and so advise the Congress. For the Congress of the United States has the unlimited right, under section 3 of article IV of the Constitution, to dispose of the property of the United States. And, notwithstanding any rights which the Government of the United States has acquired by purchase, the Congress of the United States could declare that it should forfeit these rights, or that it should not claim them.

I shall refer later to another allegation of the complaint, which alleges beneficial use. Now I point to the fact that this complaint could not have been drawn in any other form, and that the complaint was sustained by Judge Weinberger.

So that I believe that, while discussion of this lawsuit is perfectly proper, it should be confined to the question whether the Congress of the United States desires the Government to surrender the rights it asserts.

But, as a judge of this court, I wish to state that we cannot tolerate the trial of the issues of this case outside this courtroom. Until it is decided whether this case is to go on, a very dangerous climate of opinion is created in which it would be very difficult for any judge to try this lawsuit. So that I am pleased that the State of California, by coming in and filing this answer, has clarified the issues, and has conceded that the Government of the United States has the right to come into a court and have its riparian rights decided. This is not unusual.

■ A citizen of the United States has a right to sue the Government in matters relating to contracts. In 1946, we even departed from the doctrine of sovereign immunity and enacted a statute known as the Federal Tort Claims Act[3] whereby

1. California Code of Civil Procedure, Secs. 426(3), 580; Johnson v. Polhemus, 1893, 99 Cal. 240, 244, 33 P. 908; Knox v. Wolfe, 1946, 73 Cal.App.2d 494, 505, 167 P.2d 3.

2. Patterson v. State of Colorado ex rel. Attorney General, 1907, 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879.

3. 28 U.S.C.A. § 1346.

one can sue the Government direct for the torts of its employees, a right which for over a hundred years was never conceded. And now, if a truck driver from Camp Pendleton runs into a citizen, suit is brought against the United States of America. District Judges have rendered judgments running into tens of thousands of dollars for torts committed by mail-truck drivers, by soldiers, and the like.[4]

■ By the same token, it is the fundamental doctrine of the United States that the Government has the same privilege that any citizen has to bring into court for determination a right it asserts.[5]

### III
#### The Allegations of the Complaint

The complaint asserts that there is a dispute between the parties. The Government asserts certain rights to the whole flow of the river by reason of riparian ownership, and it comes into court and asks for their adjudication.

Without getting into any controversy and because the filing of this answer verifies it, I desire to refer to testimony given before Subcommittee No. 1 of the House Committee on the Judiciary, on June 25, 1951.

On that occasion, Mr. A. Devitt Vanech, Assistant Attorney General of the United States, now Deputy Attorney General, was asked concerning this litigation and he stated that the lawsuit is intended to achieve what I have just said appears to me from the pleadings on file:

"The Lands Division of the Department of Justice is required to file suits in the interest of the United States Government and its agencies on water litigation or oil litigation, and so forth, which makes me not very popular with some States. However, I have taken an oath of office and I have to live up to it.

"In this particular case the Government of the United States was requested by the Navy to determine what rights the Navy Department has by reason of its purchase of the Rancho Santa Margarita, which was acquired between 1941 and 1943. There are about 21 miles of riparian rights on the river there, and over 135,000 acres of land.

"This particular complaint which has been filed is to determine what the United States acquired by purchase and not because it is the United States Government. Now, we cannot proceed in any other way, because it is for the Navy Department and the Marine Corps. We have to go in as the Government, but going in as the Government, we are only asking to have determined what it purchased."

■ Then the question was asked what was meant by "paramount" rights. We are not going to determine today what "paramount" rights are. Anyone familiar with water law knows that California is one of the few western states in which the doctrine of riparian rights is recognized. Other western states have declared that the doctrine of riparian rights which allows the owner adjoining the water an undiminished flow of the river, was not consistent with the needs of arid western lands.

The Government of the United States concedes that riparian rights exist, that they attach to lands and are governed by the laws of the particular States.

The riparian doctrine was declared in Lux v. Haggin,[6] which is considered as

4. See, Yankwich, Problems Under the Federal Tort Claims Act, 1949, 9 F.R.D. 143.

5. 28 U.S.C.A. § 1345. This section codifies what has been the law since the first Judiciary Act of 1789. 1 Stat. 78, c. 20, § 11. See, United States v. Sayward, 1895, 160 U.S. 493, 16 S.Ct. 371, 40 L.Ed. 508; United States v. The Thekla, 1924, 266 U.S. 328, 339, 45 S.Ct. 112, 69 L.Ed. 313; Griffin v. United States, 1948, 8 Cir., 168 F.2d 457, 459. Ordinary restrictions applicable to private persons, such as estoppel, laches, limitations, do not bind the Government. Utah Power & Light Co. v. United States, 1917, 243 U.S. 389, 408–409, 37 S.Ct. 387, 61 L.Ed. 791; United States v. Summerlin, 1940, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283. And see the writer's opinion in United States v. San Diego County, 1947, D.C.Cal., 75 F.Supp. 619.

6. Lux v. Haggin, 1886, 69 Cal. 255, 10 P. 674.

the law of our State, in one of the longest decisions in the records of the California Supreme Court. And, in contrasting the rights of riparian owners with the rights of other appropriators and users, the word "paramount" was put into the law by the court.

In Lux v. Haggin, two decisions were rendered. The first one was made on October 27, 1884. In it the court generally adopted the riparian doctrine as a part of the law of the State. It held that it attached to the public lands, that the public lands passed to the State of California and, after the settlers acquired them from the State, the riparian rights, which had previously belonged to the State and the Government as the owners of the lands, passed to the riparian owners.[7]

█ The court in the later decision determined the character of this ownership, and the word "paramount" appears in it also. Indeed, one cannot draw a complaint asserting riparian rights unless one claims that the right is "paramount", that is "superior to and exclusive of" others who claim the river water by right of appropriation or percolation or any other rights.[8]

This case was decided on April 26, 1886. To quote from the decision:

"It is contended by counsel for appellants that the rights of the state to the flow of the waters on her lands were not affected by the Code for the further reason that the Code provisions were intended merely to continue or supply a rule for deciding disputes 'on the public lands of the United States.' But we think it was the manifest purpose of the legislature—derivable from title 8, as a whole, read in view of the judicial and legislative history of the state—that the rule should be the same whether applied to mere occupants of the lands of the state or of the United States, and that the riparian rights of the state, as owner of lands, were not preserved by section 1422.

"As we have seen, by resort to the presumption of a grant or license from the owner of the paramount title, our courts from an early day have determined controversies between occupants of waters, or of lands and waters, on the public domain of the United States, holding the prior possessor to have the better right; and, during its first session, the state legislature provided a mode by which one might acquire a constructive or statutory possession of a portion of the unsurveyed, and as yet unsalable, public lands of the United States, to be accepted by the courts as proving a right to the possession against all but the government. * * *
* * * * * *

"By the common law the right of the riparian proprietor to the flow of the stream is inseparably annexed to the soil, and passes with it, not as an easement or appurtenance, but as part and parcel of it. Use does not create the right, and disuse cannot destroy or suspend it. The right in each extends to the natural and usual flow of all the water, unless where the quantity has been diminished as a consequence of the reasonable application of it by other riparian owners, for purposes hereafter to be mentioned." [9]

The State of California suffered under the limitations of this doctrine. So, in 1913, the Legislature passed the Water Commission Act declaring waters not being put to beneficial use to be "public waters" and "subject to appropriation".[10]

When the matter came before the Supreme Court of California, a majority of the court held that the private riparian owners had the right even to the surplus waters and that they could not be impounded if by their impounding the rights of the riparian owners were diminished. Judge Shenk wrote a very vigorous dissent. This

7. The majority opinion is not found in the California Reports. However, Mr. Justice Ross' dissenting opinion which he adopted in the later case, is reported in 69 Cal. 442, 4 P. 919.

8. Lux v. Haggin, 1886, 69 Cal. 255, 10 P. 674, 744.

9. Lux v. Haggin, supra, 69 Cal. 376-377, 390, 10 P. 744-745.

10. Cal.Stats.1913, p. 1012.

fact is very important because it was Judge Shenk who later wrote the opinion for the court which again applied the term "paramount" to the right of the riparian owners.

In this Opinion,[11] the Supreme Court said this about riparian owners:

"* * * While it is true that the decision in the case of Lux v. Haggin was that of a divided court, we think it is also true, as stated by Mr. Chief Justice Shaw in his most able review of the 'Development of the Law of Waters in the West,' to be found in the appendix to 189 Cal. at page 779 et seq., that: 'It declared that the rights of the riparian owners to the use of the waters of the abutting stream were *paramount* to the rights of any other persons thereto; that such rights were parcel of the land and that any diminution of the stream against the will of the riparian owner by other persons was an actionable injury. The question was settled by that case and the riparian right has never since been disputed.'

"When we turn to that notable decision to determine just what was thus settled in the way of a definition of the riparian right, we find that it is embraced in the following conclusions by Chief Justice Shaw of Massachusetts in the case of Johnson v. Jordan, 2 Metc. [234], 239, 37 Am.Dec. 85, which this court therein adopted and approved in the following language (69 Cal. at page 391, (10 P. 754)): 'The right to the flow of the water is inseparably annexed to the soil, and passes with it, not as an easement or appurtenant, but as a parcel. Use does not create, and disuse cannot destroy or suspend it. Each person through whose land a watercourse flows has (in common with those in like situation) an equal right to the benefit of it as it passes through his land, for all useful purposes to which it may be applied; and no proprietor of land on the same watercourse has a right unreasonably to divert it from flowing into his premises,

or to obstruct it in passing from them, or to corrupt or destroy it.'

"In a later portion of the opinion this court said (69 Cal. at page 394 (10 P. 755)): 'By our law the riparian proprietors are entitled to a reasonable use of the waters of the stream for the purpose of irrigation. What is such reasonable use is a question of fact, and depends upon the circumstances appearing in each particular case.'

"The doctrine of riparian rights thus abstractly stated has been clarified, though not materially changed, by this court in its application to the particular cases which have come before it since the decision of the case of Lux v. Haggin, supra."

The only modification introduced since is that later decisions have done away with what some one called the "rocking-chair theory" of riparian rights, i. e., that a riparian owner could sit in his rocking chair and watch a river go by and have the right to the full flow regardless of beneficial use. The later decisions have held that the riparian owner does not have an abstract right but that his right to the undiminished flow depends upon the reasonable use to which he puts the water. That is why the Government in this case asserts that it is putting the water to reasonable use. This obviates the argument that perhaps the use of the water is not a present need. And the basis for this ruling is the decision of the Supreme Court of the State of California in Peabody v. City of Vallejo.[12] In this case, the question of the right to surplus water for beneficial use was before the court, and the court determined it. And here, as stated, Mr. Justice Shenk wrote the opinion.

After referring to the Miller & Lux case, Miller & Lux v. Madera Canal & Irr. Co., 155 Cal. 59, 99 P. 502, 22 L.R.A.,N.S., 391 and others, Judge Shenk modified some of the language in the Herminghaus case by saying that, in *view of the 1928 amendment to the California Constitution,* the right to the water of the riparian owner

11. Herminghaus v. Southern California Edison Co., 1926, 200 Cal. 81, 95, 252 P. 607, 613.

12. Peabody v. City of Vallejo, 1935, 2 Cal. 2d 351, 40 P.2d 486, 490.

should be determined by beneficial use and not in the abstract.[13] The Opinion said: "In adopting a policy modifying the long standing riparian doctrine of this state, California has done by constitutional amendment what many of the western states have done by statute or court decisions. Of the seventeen western states which are generally referred to as the irrigation states, nine now recognize the modified doctrine of riparian rights and eight have entirely abrogated the doctrine of riparian rights and recognize only the doctrine of appropriation."[14]

Then it states: "In further clarifying the new state policy we have no hesitancy in doing so without fear of infringing upon any provision of the Federal Constitution. The attitude of the Supreme Court of the United States has been consistent in leaving the question of private water rights, which do not involve federal or interstate interests, to the control of local state policies."[15]

The Opinion then gives this summary of the California law of riparian rights as it exists today:

"1. The right to the use of water is limited to such water as shall be reasonably required for the beneficial use to be served.

"2. Such right does not extend to the waste of water.

"3. Such right does not extend to unreasonable use or unreasonable method of use or unreasonable method of diversion of water.

"4. Riparian rights attach to, but to no more than so much of the flow as may be required or used consistently with this section of the Constitution."[16]

In other words, this decision following the 1928 Constitutional amendment, places a limitation upon the riparian owner by saying that he is not entitled to the undiminished flow, regardless of whether he uses the water beneficially or not. That is why the Government of the United States, in asserting these rights in the complaint, stated that it needs for the purposes it recites in paragraph VIII the entire flow of the river. It is their way of saying that they put all the water to beneficial use. And whether they do or not is a question to be determined by the court, in this as in any other case, by considering the use to which it is being put.

■■■ Of course, the Government must assert that the defendants, in some manner, have disputed these rights. Otherwise, there would be no justiciable controversy. So the Government, in paragraph IX, says that these rights are subsequent and subservient to their rights.

## IV
### Beneficial Use

Coming back to the Peabody case, attention is called to a paragraph which shows that the complaint here was couched in the only language in which it could be couched under the laws laid down by the Supreme Court of California. "There is and should be no endeavor to take from a water right the protection to which it is justly entitled. The preferential and *paramount* rights of the riparian owner, the owner of an underground and percolating water right, and the prior appropriator are entitled to the protection of the courts at law or in equity. When there is no substantial infringement of the right, that is, when there is no material diminution of the supply by reason of the exercise of the subsequent right, the owner is entitled to a judgment declaring his preferential and *paramount* right and enjoining the assertion of an adverse use which might otherwise ripen into a prescriptive right. * * * If the exercise of the appropriative right cause a substantial diminution of the supply the owner is entitled to compensation for the resulting damage to his

13. California Constitution, Art. XIV, Sec. 3; California Water Code, Secs. 100–102.

14. Peabody v. City of Vallejo, supra, 2 Cal.2d at page 365, 40 P.2d at page 490.

15. Peabody v. City of Vallejo, supra, 2 Cal.2d at page 366, 40 P.2d at page 491.

16. Peabody v. City of Vallejo, supra, 2 Cal. 2d at page 367, 40 P.2d at page 491.

lands. But the technical infringement of the right is not actionable, * * * except to establish priority. This is but another way of saying that the appropriator may use the stream surface or underground, or percolating water, so long as the land having the *paramount right* is not materially damaged. Any use by an appropriator which causes substantial damage thereto, taking into consideration all of the present and reasonably prospective recognized uses, is an impairment of the right for which compensation must be made either in money or in kind, and in the event public use has not attached the owner of the paramount right is entitled to injunctive relief." [17] (Emphasis added.)

And that is exactly what the Government asserts in this complaint, because in paragraph IX it says: "In direct violation of the rights of the United States of America and in complete disregard of the need of the water in question for National Defense, the defendants by reason of their diversions from the Santa Margarita River upstream from Camp Pendleton, have caused the intrusion of salt water from the Pacific Ocean as described above, to the irreparable damage of the United States. They have likewise repeatedly through overt acts displayed their disregard for the rights of the United States of America and have declared their adverse claims in contravention of the rights of the United States of America. They have likewise repeatedly asserted that their rights, though acquired subsequent to and with full knowledge of the rights of the United States, and its predecessor in interest, and the needs of the United States for the military purposes mentioned, are paramount to the rights of the United States of America, and proceeded to encroach upon and now are encroaching

upon and threaten to continue to encroach upon the already insufficient supply of water required for the Nation's defense in connection with Camp Pendleton, the United States Naval Hospital and the Naval Ammunition Depot."

I have no desire to engage in any controversy. I believe that the filing of this petition is an opportunity to call attention to the fact that, regardless of what the Congress may or may not do, the judges of this court are interested in just one thing, i. e., in determining a lawsuit. And that, so far as we are concerned, the measure of the lawsuit is *what is before us,* not what any representative of the Government or representative of an interested party may claim. In this we treat this lawsuit as we do any other lawsuit.

Some years ago, the Government of the United States filed a claim to water rights in Death Valley, under the laws of the State of California. Then one of the old-time residents diverted the spring at the source. And the Government of the United States came into court and asserted its rights under its appropriation, just as it is asserting its rights here as a riparian owner, and *not by reason of any sovereignty.*

I find nothing in this complaint which asserts any right to this water in the United States *because it is the Government of the United States.* It is asserting its right merely as owner of the Santa Margarita Rancho. And the only reason why it is using the word "paramount" is because that word has been accepted as expressing the superiority of the right of the riparian owner over the rights of others. The Government, after asserting that, states that it is putting the water to beneficial uses, in order to comply with the later decisions of the Supreme Court of Cali-

---

17. Peabody v. City of Vallejo, supra, 2 Cal.2d at page 374, 40 P.2d at page 494. This case has been followed consistently. And the law is firmly established that "*the paramount*" rights of the riparian owner are limited by beneficial use. See, Allen v. California Water & Tel. Co., 1946, 29 Cal.2d 466, 481, 176 P.2d 8; Fell v. M. & T., Incorporated, 1946, 73 Cal.App. 2d 692, 694, 166 P.2d 642; City of Pasadena v. City of Alhambra, 1949, 33 Cal.2d 908, 926, 207 P.2d 17; Orchard v. Cecil F. White Ranches, 1950, 97 Cal.App. 2d 35, 42–43, 217 P.2d 143. The Supreme Court of the United States has given us a brilliant interpretation of the effect of the 1928 amendment on riparian rights in California. See, United States v. Gerlach Live Stock Co., 1950, 339 U.S. 725, 750–754, 70 S.Ct. 955, 94 L.Ed. 1231.

fornia and the mandate of the constitutional amendment of 1928.

So the upshot of the whole matter is this, that so far as the pleadings of this case are concerned, and regardless of any outside agitation, we are concerned only with the assertion of the Government, which, like any other litigant, comes into court and says, in effect, "I bought a ranch. It has certain appurtenant water rights. I am the owner of the water rights. I am putting the water to beneficial use. Other persons are disputing my rights. So I desire the court to determine these rights." *That is the American way.* A totalitarian government would not come into court and ask for determination of its rights. *It would "take" what it claimed.*

This action was brought under the federal statute, 28 U.S.C.A. § 2401 et seq., which allows actions to be brought by the Government as plaintiff. The State of California, by the petition filed and by the type of its answer, is clarifying the issue and asserting that it recognizes the right of the Government of the United States to come into court and have its rights adjudicated. Whether the Government *is* or *is not* right is an entirely different matter.

I am certain that the judges of this court, or whichever one of them is chosen, will be able to determine the matter in the light of the testimony to be given. The idea of the Government coming into its courts and asserting rights against individuals is not novel at all. It is constantly happening. It is the only way that it can and should, if we are true to our democratic heritage, be done. As stated, the Congress of the United States has the right to authorize, or to order the abandonment of, a lawsuit.[18] But insofar as the issues as disclosed by the pleadings are concerned, I think the matter should be set straight. This is merely a suit to declare the rights

of the Government as owner of property under the riparian law of the State of California.

The permission will be granted, and the answer already lodged may be filed as of this date.

---

18. As already stated the Congress may dispose of property of the United States. U.S.Constitution, art. IV, § 3, cl. 2; Sinclair v. United States, 1929, 279 U.S. 263, 294–295, 49 S.Ct. 268, 73 L.Ed. 692; Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 330–333, 56 S.Ct. 466, 80 L.Ed. 688; United States v. City and County of San Francisco, 1940, 310 U.S. 16, 29–30, 60 S.Ct. 749, 84 L.Ed. 1050; And, "The constitutional power of Congress in this respect is without limitation." United States v. California, 1947, 332 U.S. 19, 27, 67 S. Ct. 1658, 1663, 91 L.Ed. 1889.